**TRINITY UNIVERSAL INSURANCE COMPANY, Petitioner,**

v.

**BARLITE, INC. d/b/a Barrett Industries, Respondent.**

**No. B–808.**

Supreme Court of Texas.

Dec. 4, 1968.

Rehearing Denied Jan. 15, 1969.

Wiley & Plumb, Dayton G. Wiley and Peter N. Plumb, San Antonio, for petitioner.

Moursund, Ball & Young, Travis M. Moursund, San Antonio, for respondent.

GRIFFIN, Justice.

This is a suit brought by Barlite, Inc., d/b/a Barrett Industries, against Trinity Universal Insurance Company and Alvin Frieden on an account to recover for concrete furnished by Barlite, which went into the construction of the Tradewinds Apartment project. Frieden, as contractor, entered into a written contract with the owner, F. B. & D., Inc., a Texas corporation of which Frieden was president, to construct this project for the sum of one million dollars pursuant to certain plans and specifications. Trinity executed a statutory payment bond on behalf of Frieden in the penal sum of one million dollars for

the stated purpose of the owner complying with Art. 5472d, Vernon's Ann.Civ.Stats. This suit involves the construction of parts of Arts. 5452–5472e, sometimes referred to as "The Hardeman Act."

Barlite's claim against contractor Frieden was severed, leaving only Trinity as a defendant. Barlite and Trinity each filed motions for summary judgment, and after a hearing the trial court entered judgment that Barlite recover nothing from Trinity on this payment bond. The contract and bond were executed on August 15, 1962.

On appeal by Barlite to the Court of Civil Appeals it was held that there were fact issues to be determined and therefore the granting of the defendant's motion for summary judgment was error, and the judgment was reversed and remanded to the trial court for a new trial on the merits in accordance with the court's opinion. 400 S.W.2d 405, writ refused, n. r. e.

Upon this appeal the Court of Civil Appeals affirmed the trial court's judgment. 424 S.W.2d 303.

On this retrial, from which this present appeal was taken, trial was by the court without a jury. The trial judge entered judgment for Barlite against Trinity in the sum of $13,414.19 for concrete furnished by Barlite to F. B. & D., Inc., the owner, upon a letter order dated August 29, 1962, signed by Frieden as president of F. B. & D., Inc., and by Joe P. Martinez, Inc.

Owner had contracted with Martinez to do certain foundation work on the Tradewinds Apartments, and in doing this work Martinez used the concrete for which suit was brought. This letter reads as follows:

"August 29, 1962

Barrett Industries, Inc.
2718 Military Drive, S.W.
San Antonio, Texas

Gentlemen:

Our firm has contracted with Joe P. Martinez, Inc., for certain foundation work on an apartment house commonly known as Tradewinds Apartments, located at 100 South Sea Lane, San Antonio, Texas. Because of banking and bonding requirements it has become necessary that our firm buy and be billed for, directly, any concrete to be used in these foundations.

This letter will serve as our joint authority for you to deliver concrete to the above mentioned job on J. P. Martinez' request and bill direct to the above address. We will insist however, that every statement be accompanied by an invoice and or delivery ticket receipted by our foreman on the job. These invoices will be paid on the first of the first of the month following the delivery. I trust this information meets with your approval and I request a confirmation from you as soon as possible.

Sincerely,

F. B. & D., Inc.

Alvin Frieden
President

Joe P. Martinez, Inc.
JOE P. MARTINEZ"

Barlite confirmed this arrangement.

When the plans and specifications for the construction work were completed, owner needed financing to carry out this project. Owner intended to do the construction work itself, but the Chase Manhattan Bank would not make the necessary funds available unless owner made a contract with a contractor to build Tradewinds and unless the contractor was properly bonded to complete and pay for the job. Trinity would make bond for Frieden, as contractor, only on condition that the principal subcontractors make solvent payment bonds. Martinez was unable to furnish the required bond, but owner wanted to use Martinez for the foundation work. Trinity, owner, and contractor then worked out a plan whereby owner would purchase concrete direct and hire Martinez to do

the work, so that Martinez would not be Frieden's subcontractor. Under this arrangement Trinity made contractor's payment bond; owner wrote its letter of August 29th to Barlite whereby Martinez was to buy the required concrete and Barlite would bill owner direct for these purchases and owner would pay for the invoices "on the first of the first of the month following the delivery." These invoices submitted by Barrett Industries all showed the charges to "F. B. & D., Inc., [owner] in care of Joe Martinez," or were billed to F. B. & D., Inc. direct.

The contract entered into on August 15, 1962 between owner F. B. & D. Inc. and contractor Alvin Frieden was attached to the Trinity bond and was incorporated therein by reference. The plans and specifications for the building of Tradewinds Apartments were a part of the contract and included the foundation work for which the concrete sued for by Barlite was used.

When owner failed to pay in full Barlite's attorneys on February 8, 1963, wrote F. B. & D., Inc. that their client, Barlite, had a total claim against them in the amount of $21,199.99, and that something had to be done immediately or Barlite would take appropriate legal action.

On February 12, 1963, Barlite's attorneys wrote F. B. & D., Inc. [owner], Alvin Frieden [contractor], and Trinity [surety], at their addresses, giving notice on behalf of their client of the claims for "ready-mix concrete supplied to the Tradewinds Apartment job in the sum of $11,192.77." The letter further stated: "We understand that F. B. & D., Inc. is the owner of the project and Alvin Frieden is the original contractor; that our client supplied material direct to the owner," and enclosed statements of billing as part of the notice given, and gave notice that if the bill remained unpaid, owner would be personally liable and its property subjected to a lien, unless from payments due contractor sufficient funds were withheld for the payment of the claim of Barlite. Letters containing similar wording were written by Barlite's attorney to owner, contractor, and Trinity on May 5, July 1, and September 3, 1963. Attached to each letter were invoices made out to F. B. & D., Inc.

The bond furnished by Trinity was made for Alvin Frieden, the original contractor, as principal, with Trinity, as surety, unto F. B. & D., Inc., "owner-obligee" and Chase Manhattan Bank, as lender. The bond recited:
" *  *  *

"WHEREAS, the Principal has entered into a certain written contract with the Owner, dated the 15th day of August, 1962, to construct the Tradewinds Apartments, 100 South Sea Lane, San Antonio, Texas, which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein:

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH THAT if the said Principal shall promptly pay claimants for all labor, subcontracts, materials and specially fabricated materials *performed or furnished under or by virtue of said contract* and duly authorized normal and usual extras thereto (not to exceed 15% of said contract price), then this obligation shall be void, otherwise to remain in full force and effect; labor, subcontracts, materials and specially fabricated materials shall be construed in accordance with Article 5452, Vernon's Revised Civil Statutes of Texas, 1925, as amended by the Acts of the Regular Session of the 57th Legislature, 1961.

"PROVIDED, HOWEVER, that the Owner having required the said Principal to furnish this bond in order to comply with the provisions of Article 5472d of Vernon's Revised Civil Statutes of Texas, added by Acts of the Regular

Session of the 57th Legislature, 1961, all rights and remedies on this bond shall inure solely to such claimants and shall be determined in accordance with the provisions, conditions and limitations of said Article to the same extent as if they were copied at length herein." (All emphasis herein is that of this Court.)

It is contended by petitioner Trinity that Barlite is not covered by its bond issued for Frieden, the contractor, because Barlite never sold Frieden any concrete, but sold it only to F. B. & D., Inc.; that Martinez was not Frieden's subcontractor, but was an original contractor with F. B. & D., Inc., therefore, the bond did not cover the failure of the owner, F. B. & D., Inc. to pay for concrete it purchased direct from Barlite. Respondent contends that the concrete was used to fulfill contractor's obligation to owner to build Tradewinds Apartments; that the plans and specifications—which included the concrete foundation—were a part of the contract between owner and contractor, and this contract was incorporated in the bond by reference; that the bond under the Hardeman Act, being for the full contract price, freed the owner from any mechanics, materialmen or laborers liens on the project, and therefore materials furnished by anyone to owner to complete the contract and discharge contractor's obligation to build the structure were under the terms of the bond. The trial court and the Court of Civil Appeals agreed with this reasoning of respondent. We do not agree and reverse the judgment of both courts below.

Art. 5452, Vernon's Ann.Civ.Statutes, is the first statute of the Hardeman Act. Generally, it provides that any person furnishing labor and material for the construction of any house, building or improvement within this State by virtue of a contract with owner or contractor shall have a lien on such improvements to secure the payment for those items furnished. Sec. 2 of the Article provides that for the purpose of

this Act certain definitions shall apply. Sec. 2, subdivision e defines an original contractor as "one contracting with an owner, directly or through his agent," and an original contract is defined as "an agreement to which an owner is a party, either directly or by implication of law. There may be one or more original contractors." The Court of Civil Appeals in its opinion on the first appeal recognized that there could be more than one original contractor; that each "original contractor" would be required to furnish a statutory bond covering his contract "in order to protect the owner for work performed or materials furnished under this particular contract." 400 S.W.2d 407.

■ Under this definition Barlite was an original contractor in so far as furnishing the concrete for the foundation was concerned. Art. 5452 and Art. 16, Sec. 37 of the Texas Constitution, Vernon's Ann. St. gave Barlite a right to fix a lien to secure its claim on the improvements and on the lot or lots of land necessarily connected therewith by complying with the further provisions of the Act as to the manner and method of fixing and establishing such lien.

Barlite has never attempted to fix such a lien in accordance with the above provisions. All parties admit that the notices given by Barlite to the owner, contractor and Trinity were sufficient to comply with the requirements of Art. 5472d.

The trial court by its finding of fact No. 27 found:

"All of the concrete for which claim is made in this suit by Barlite, Inc. was delivered by Barlite, Inc., pursuant to the contract represented by the letter of August 29, 1962, and was sold to F. B. & D., Inc., the owner corporation, and was billed to F. B. & D., Inc., the owner corporation."

■ Art. 5472d does not provide for a bond to guarantee an original contractor

payment for labor and material it may furnish the owner and which is used in the construction of a building or an improvement, etc. This article gives no lien of any kind or character to anyone but is to guarantee payment of all labor, materials, etc., as defined in Art. 5452 and extras not to exceed 15% of the contract price. The bond required by Art. 5472d is to take the place of the liens fixed by Art. 5452 when perfected as required in Art. 5453. The bond covers only the labor, materials, etc. furnished by others to an original contractor for the completion of the project and payment of claims against such contractor. A reading of the whole of the Hardeman Act shows the above construction to be the correct one. Art. 5472d, Sec. 7 provides only for immunity against liens covering the *owner's* property. The language is: "In all cases where bonds have been filed in accordance with this Article, no suits shall be filed *against the owner* nor *against his property*," etc. The Article goes on to protect any purchaser, lender or other person acquiring any interest in said property; and relieves *the owner* of all obligations under Articles 5454, 5463 and 5469 of the Act. These last three Articles cover rights and duties of an owner to withhold funds from payment to an original contractor and prescribes the duties and obligations of the owner to those having valid legal claims on these withheld funds.

Barlite, being an original contractor under the facts of this case and the findings of the trial court, had no claim against Trinity, the surety on the bond of another original contractor, Frieden, for payment of the value of concrete, etc. Barlite furnished to F. B. & D., Inc., the owner.

■ Barlite makes the further claim that Trinity is estopped to deny liability under its bond made for Frieden, as principal, because Trinity was a party to the arrangement whereby Barlite was to sell direct to owner, thus preventing Martinez from being a subcontractor for Frieden, an original contractor. The elements of estoppel are not present in this case. The record shows that Trinity would not have bonded the building project if Martinez was used as a concrete subcontractor on the same. In addition to finding the above facts, the trial court found that Trinity "agreed to bond the same even if Joe P. Martinez was so used, if a requirement was made that concrete be billed to F. B. & D., Inc. instead of Joe P. Martinez." This finding does not show Trinity's bond covered the concrete furnished, but on the contrary, taken with the other findings and the record, shows that the intention of all parties was that Trinity was not to be liable for concrete used by Martinez on this project and that the cost of the concrete was not to be covered by Trinity's bond.

The obligation of Trinity's bond made for Frieden as principal to F. B. & D., Inc., as owner "is such that if the said principal shall promptly pay claimants for all labor, subcontracts, materials * * * performed or furnished *under or by virtue of said contract* (plus extras), then this obligation shall be void, otherwise to remain in full force and effect * * *." The concrete sued for was not furnished under and by virtue of Frieden's contract with owner, but under and by virtue of owner's letter to Barlite dated August 29, 1962. Therefore, the bond does not cover the value of the concrete.

■ An original contractor has a lien against an owner for labor, materials, etc. he furnishes for the construction of the building or improvements by virtue of Art. 16, Sec. 37 of the Constitution of Texas, Vernon's Ann.Tex.Const. and Art. 5452, Vernon's Ann.Civ.Stats., and Art. 5453 provides a method whereby an original contractor may fix and secure this lien. No such procedure was followed in this suit.

The judgments of both courts below are reversed, and judgment is here rendered that Barlite take nothing against Trinity.

REAVLEY, J., not sitting.