A. R. JOHNSTON et al., Appellants,

v.

W. E. FELKER, d/b/a Coastal Neon & Electric Company, Appellee.

No. 7172.

Court of Civil Appeals of Texas, Beaumont.

Oct. 22, 1970.

Rehearing Denied Nov. 19, 1970.

King, Sharfstein & Rienstra, Beaumont, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellants.

Carruth, Gray & Doyle, George Sladczyk, Jr., Port Arthur, for appellee.

KEITH, Justice.

Fidelity and Deposit Company of Maryland (hereinafter "F&D") appeals from a judgment in favor of Felker, plaintiff below, upon the terms of a bond executed by F&D under the provisions of the Hardeman Act, Article 5472d, V.A.C.S.[1] (hereinafter "Act"). Johnston was sued as an "original contractor" and F&D was joined as the surety upon the bond filed under the Act. Upon findings by the jury favorable to the plaintiff, judgment was entered against Johnston and F&D, jointly and severally, for the amount of the indebtedness and attorney's fees. There is no complaint as to the amount of either award.

Johnston duly perfected his appeal from the judgment, but filed no brief herein. Felker's motion to dismiss Johnston's appeal was carried with the case but is now sustained. Rule 415. We will consider Johnston's activities in the case only insofar as they bear upon the controversy remaining between F&D and Felker. Fitch v. International Harvester Company, 163 Tex. 221, 354 S.W.2d 372, 373 (1962).

■ We note, *sua sponte,* that the judgment makes no disposition of the cross-action of F&D against Johnston upon the provisions of the indemnity agreement contained in his application for such bond. Nor does the judgment dispose of F&D's third party action against one Robert Damrel who stipulated upon the trial that he entered into a "Joint Venture Agreement" with Johnston and that he had executed an agreement to indemnify and hold F&D harmless from any and all claims and expenses arising out of the execution of the bond involved in this suit. We consider the judgment to be a final and appealable judgment under the rationale of North

---

1. All references are to Vernon's Annotated Civil Statutes, 1925, as amended, and all emphasis has been supplied unless otherwise noted.

East Independent School District v. Aldridge, 400 S.W.2d 893, 897–898 (Tex.Sup., 1966).

■ The primary question presented by this appeal is whether or not Johnston was an "original" contractor, as that term is used in the Act; or to state it conversely, was Felker a subcontractor on the job, entitled to the protection of the bond which Johnston filed with F&D as surety? The jury found that Felker furnished the labor and materials used on the job at the "instance and request of Johnston", by virtue of the instrument dated January 12, 1966; the value of the labor and materials; the reasonable attorney's fees; and, failed to find that Felker was an "original contractor." [2] By appropriate "no-evidence" points, F&D challenges the findings upon which liability is predicated, and our review of the evidence will be under the rule announced in the much-cited case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952).

Center Enterprises, Inc. (hereinafter "Center"), contemplating the construction of a shopping center in Groves, Texas, sought bids from general contractors for the construction of said shopping center, but rejected all of such bids, including that of Johnston. Then, as we understand the record, it procured bids from various individuals and companies as subcontractors for work on particular parts of the overall job. One such bid was from Johnston for the concrete work and one was from Felker for the electrical work. Felker's bid of

slightly more than $33,000.00 was submitted to Center on December 10, 1965, and accepted by Center upon the same date. Johnston and Felker were not acquainted and had had no prior dealings. Center's interim financing was limited to $204,000.00 and the land upon which the building was to be placed was already burdened by a lien held by the financing bank.

Johnston, at the urging of Center and the agent of the permanent financing agency, then worked out an arrangement whereby he submitted a proposal to Center to construct the proposed structure for precisely the sum available. This proposal (attached hereto as an exhibit) was basically a recapitulation of the several bids of the subcontractors, such as Felker, with the totals rounded off to even thousands of dollars so as to fit the exact amount available from the bank.

The parties then met in the office of the agent of F&D, where the bond now in issue was executed with Johnston described therein as the general contractor and Johnston's proposal attached thereto. This instrument was filed for record on February 15, 1966, after the start of the construction upon the project. Johnston steadfastly maintained throughout the litigation that he was simply a "coordinator" on the job and that Center, in fact, was its own general contractor,[3] but the jury disagreed.

Felker began the electrical work upon the project some few weeks or a month after the execution of the bond and at a time

2. The jury's answer to this defensive issue simply means that the defendants failed to carry their burden of proving the necessary fact. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.Sup., 1966).

3. Johnston introduced into evidence a letter from Center, dated June 13, 1966, wherein Center stated: "This letter is written to evidence our agreement that your compensation for supervision of and

providing hand tools necessary to the completion of Groves Shopping Center shall be the sum of $400.00 per week from the inception of the job which would be 24 weeks up to the date of this letter, and continuing hereafter until completion. In addition to the above we agree that if the building satisfactorily completed, to enable to [sic] company to meet its permanent financing requirements we will pay you $4000.00 as a bonus."

when he had no agreement of any kind with Johnston. During the course of the construction, Felker approached Johnston and procured his signature upon the original bid which had been submitted to and accepted by Center on December 10, 1965.[4] Before the financial collapse of the project, Felker had received several payments for his work (with 10% of each estimate being retained) in the form of checks signed by an officer of Center and Johnston.

By its first point, F&D asserts that the evidence establishes, as a matter of law, that Felker was an original contractor on the project; consequently, it is argued, the trial court erred in overruling its motion for judgment non obstante veredicto. In addition to the evidence which we have set out herein, we find in our record a certified copy of a mechanic's and materialman's lien filed by Johnston for recordation in the County Clerk's office several months before the filing of the suit below. In this affidavit attempting to affix a lien, Johnston swore that Center was the "owner or reputed owner of said land" and that "A. R. Johnston is the original contractor on the job." This sworn statement, made before the commencement of the litigation, was a judicial admission on the part of Johnston inconsistent with the position which he now asserts Gevinson v. Manhattan Construction Company of Oklahoma, 449 S.W.2d 458, 466 (Tex.Sup., 1970). Cf. Morrison Supply Co. v. M. W. Hamilton & Co., 411 S.W.2d 790, 793 (Tex. Civ.App.—Amarillo, 1967, no writ), and Trinity Universal Insurance Company v. Palmer, 412 S.W.2d 691, 694 (Tex.Civ. App.—San Antonio, 1967, error ref., n. r. e.). Point one is overruled.

By its third point, F&D contends that there was no evidence of a valid contract between Johnston and Center, consequently, it claims, F&D was not liable to Felker. The basis of the point is to be found in the first sentence of the "contract" between Johnston and Center, reproduced as an exhibit hereto. Seizing on the words "proposed contract", F&D argues that "this is clearly not an enforceable contract between the owner and the original contractor, and consequently the terms and provisions of Article 5472d have not been complied with * * *" It admits that the point is one of "first impression" and we agree.[5]

The bond declared upon is clearly one designed to comply with the provisions of Article 5472d, and provides:

"* * * Owner. having required the said Principal to furnish this bond in order to comply with the provisions of Article 5472d * * * all rights and

---

4. The testimony is not clear as to when this was done. The original proposal of Felker to Center is in our record and the only alteration or addition after its original date of December 10, 1965 is the addition of Johnston's signature in this manner:

"ACCEPTANCE OF PROPOSAL
/s/ A. R. Johnston

"The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

"ACCEPTED:                                     Center Enterprises, Inc.
"Date Dec 10, 1965                   Signature /s/ Don Woods, Pres.
                                              Signature /s/ T. C. Miller"

[The foregoing form is printed and only the italicized portion is handwritten.]

---

5. We say, as did Chief Justice Calvert in University Savings & Loan Ass'n v. Security Lumber Company, 423 S.W.2d 287, 292 (Tex.Sup., 1967): "The contention is novel and ingenious, and we can understand why neither party has cited us to any prior decision directly in point."

remedies on this bond shall inure solely to such claimants and shall be determined in accordance with the provisions, conditions and limitations of said Article to the same extent as if they were copied at length herein."

One of the provisions of "said" Article 5472d is that found in § 8, reading as follows:

"Any bond which is either furnished and filed in attempted compliance with this Article or which by its express terms evidences its intent to comply with this Article shall in either event be construed to effectuate such intention and all rights and remedies on such bond shall be enforceable in the same manner and under the same conditions and limitations as the bond provided for in this Article."

The bond, incorporating as it does the provisions of the "contract", meets both of the requirements set out in § 8 and is under the statute enforceable as a bond complying therewith. We do not have before us any dispute between Center and Johnston nor does any party invoke the provisions of § 1 of Article 5452–1, relating to "sham" construction contracts.

■ Under Johnston's evidence, he entered upon the work contemplated by the "contract" upon which Felker sues and continued to work thereunder so long as Center's money held out. Thus, the parties to the contract (Center and Johnston) considered it to be binding and enforceable; and, we note too, that F&D executed the payment bond with full knowledge of the latent ambiguity in the contract forming the basis of its bond. Under these circumstances, we apply the rule that the practical construction placed upon a contract by the parties themselves constitutes the highest evidence of their intention that whatever was done by them in the performance of the contract was done under its terms as they understood and intended same

should be done. Superior Oil Co. v. Stanolind Oil & Gas Co., 150 Tex. 317, 240 S.W. 2d 281, 285 (1951); James Stewart & Co., Inc. v. Law, 149 Tex. 392, 233 S.W.2d 558, 559, 22 A.L.R.2d 639 (1950); Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504, 508 (1942). Point three is overruled.

We consider F&D's second, fourth and fifth points together. In this series, F&D contends (2nd) that Felker judicially admitted by his pleadings that he was an "original contractor"; (4th) that there was no evidence that Felker furnished any labor or material "under or by virtue of the purported contract between A. R. Johnston and Center Enterprises, Inc."; and (5th) that there was no evidence that Felker "supplied any materials or labor at the instance and request" of Johnston. These are all "no-evidence" points and will be so considered. See, Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.Law Rev. 361 (1960).

The case of Trinity Universal Insurance Company v. Barlite, Inc., 435 S.W.2d 849 (Tex.Sup., 1968) is not dispositive of the question. There it was clearly shown, and the trial court found as a fact, that Barlite's customer, Martinez, was specifically excluded from coverage of the bond, and that Barlite had sold the material directly to the owner. Barlite, being an original contractor in law and in fact, had no right to recover under the Hardeman Act bond (435 S.W.2d at p. 853).

In Campbell Brothers, Inc. v. General Electric Supply Co., 383 S.W.2d 61, 63 (Tex.Civ.App.—Dallas, 1964, error ref., n. r. e.), the court, considering Article 5472d, said:

"Thus the law is abundantly clear that to recover under the provisions of this law one is required to show that he is a claimant who has furnished labor or material for the construction of a build-

ing or improvement within this state, under or by virtue of a contract with the owner, contractor, or with any subcontractor, and that requisite notice of the furnishing of such material must have been made to the surety, or to the contractor, as provided by the existing statutes."

There is no question in our record but that Felker did in fact furnish labor and material for the construction of the shopping center. Such labor and material was incorporated into the project at a time when Johnston was holding himself out (on the job and by his recorded contract in the County Clerk's office) as the original contractor upon the project. He readily admits that he knew that Felker's men and material were being used in the electrical work upon the job; and after such knowledge, he affixed his signature to the proposal which Felker had theretofore made to Center (fn. 4, supra).

F&D contends, most vigorously, that Felker did not furnish labor and material on the job by reason of Johnston's contract with Center (that dated January 12, 1966, incorporated into F&D's bond), but because of Felker's direct contractual obligations to Center resulting from his own proposal (and its acceptance) on December 10, 1965. In urging this point upon us, F&D points to Felker's testimony: (a) all invoices for labor and material were submitted to Center and not to Johnston; (b) at the time he submitted his proposal to Center (December 10, 1965), he did not have any idea of who might be the general contractor; (c) he never submitted any proposal to Johnston; and, finally, (d) this direct quotation from his cross-examination:

"Q. And all the materials that you furnished out on this job, you furnished it pursuant to that contract that has been identified as Plaintiff's

Exhibit 6 [Felker's proposal to Center dated December 10, 1965]?

"A. Yes, sir."

■ From this premise, F&D argues that there is no evidence to support the jury's affirmative answer to Special Issue No. 2, reading:

"Do you find * * * that W. E. FELKER * * * furnished the labor and materials * * * under or by virtue of the instrument dated January 12, 1966, between CENTER ENTERPRISES, INC. and A. R. JOHNSTON * * *?"

Special Issue No. 2 was conditioned upon an affirmative answer to Special Issue No. 1 by which the jury found that Felker furnished the material and labor set out in his claim "at the instance and request of the defendant, A. R. Johnston."

Felker's counsel is not too helpful in refuting the point so made by F&D. However, he does say: "If it is assumed * * that JOHNSTON had a valid Contract * * * to provide the electrical work on the project, there is ample evidence in this record that FELKER did provide what JOHNSTON required to fulfill his Contract with the owners." He also points out that Felker did the electrical work without objection from Johnston and that the latter coordinated the electrical work, along with the other crews upon the project; and, finally, signed Felker's progress payment checks after approving his invoices therefor.

In our review of this "no-evidence" point, we bear in mind Chief Justice Calvert's comments found in " 'No Evidence' and 'Insufficient Evidence' Points of Error", supra, noting that it is based upon the appropriate procedural step, viz., an order overruling a motion for judgment non obstante veredicto [*Id.* § 1(c), p. 362]. In

our analysis of the quantity and quality of the evidence, admittedly a more difficult task, we must first ascertain if the point relates to a "vital fact" [*Id*. § 2(a)].

Article 5472d, § 1, does not *expressly* require that the labor and material be furnished or supplied to the original contractor or even at his *direct* request. The subdivision, boiled down to its absolute essentials, simply provides that when there exists a written contract between the owner and the original contractor, supported by the bond, and such are filed in the County Clerk's office, "such payment bond shall inure solely to all claimants either giving and filing the applicable notices and claims under Article 5453, or making claims in the maner provided in paragraph 4 of this Article."

Those who can claim the protection and benefits of the bond are, therefore, those who are eligible to file claims under the two cited statutory provisions. In order to determine who may file a claim under Article 5453, we must turn to the article immediately preceding, Article 5452, which prescribes the lien. We have already approved the jury finding that Johnston was an "original contractor" (fn. 2, supra, and cognate discussion), and have declined to find that F&D is in position to challenge the existence or validity of the "contract" between Johnston and Center. These two prior holdings bring into focus Article 5452, subdivision 2 f, reading in part:

"A subcontractor is any person or persons, firm or corporation who has furnished labor or materials or both as defined above to fulfill an obligation to an original contractor or to a subcontractor to perform all or part of the work required by an original contract."

And, under the "contract" between Johnston and Center, he was required to do the electrical work on the job for a sum not more than $33,000.00 and Felker was the only one, under our record, who did *any* work "to fulfill" Johnston's obligation thereunder.

Felker was, consequently, eligible as a claimant under the notice provisions of Article 5453. He actually gave the notices required under the alternative provisions of subdivision 4 a, Article 5472d, but no point is made concerning the sufficiency of the notices under either article.

The "vital fact" or ultimate inquiry of the jury was not whether Felker furnished labor and material under a particular contract, but whether or not he furnished labor or material which enabled Johnston to fulfill his obligations under the contract between Johnston and Center. Granted that the evidence quoted by F&D does not lend support for the issue *as submitted,* nevertheless, the evidence in our record is abundantly sufficient to meet the ultimate issue in the case. Only through Felker's efforts did Johnston even attempt to fulfill his contractual obligations to the owner.

Therefore, while there is no direct evidence supporting the finding of the jury in answer to Special Issue No. 2, we overrule the point for the reason that such issue did not submit the "vital fact" necessary for Felker to prevail. Calvert, supra, p. 363.[6] Special Issue No. 1, which does find adequate support in the record as a whole, supplied the "vital fact" necessary for Felker to recover. Rule 279. Reversible error is not shown. Rule 434.

Upon oral submission of the cause, counsel for F&D abandoned its final point involving a procedural question, and all counsel agreed that the case had been fully developed upon the trial. Having reviewed the record, we find no error requiring a re-

---

6. Thus, we do not reach the "scintilla rule" mentioned by Chief Justice Calvert in his article (*Id*. at p. 363). See also, Texas Sling Company v. Emanuel, 431 S.W. 2d 538, 540 (Tex.Sup., 1968) and Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex.Sup., 1970) for more recent expressions on the subject.

versal of the judgment in favor of Felker and against F&D.

The appeal of Johnston is dismissed; and, the judgment of the trial court as between Felker and F&D is in all things

Affirmed.

EXHIBIT

"January 12, 1966

"To: Center Enterprises, Inc.
6404 Gonzales Court
Groves, Texas

"I or we agree to furnish all materials, tools, labor, and facilities to construct the building in *accordance with the proposed contract,* documents consisting of the general conditions, specifications, drawings and addenda thereto as prepared by Lowell Lammers, Architect.

"Based on the revision, we agree to perform the following amount of work in order to put an enclosed building on the site of the Groves Shopping Center.

| | |
|---|---:|
| "Sitework, including drainage | $ 11,000.00 |
| Roof and Roofdeck | 30,000.00 |
| Structural Steel | 35,000.00 |
| Glass, including doors | 12,000.00 |
| Electrical (including parking) | 35,000.00 |
| Masonry | 28,000.00 |
| Structural Concrete and Slab | 45,000.00 |
| Plumbing (roughed in) | 8,000.00 |
| | $204,000.00 |

    *     *     *     *     *     *

"  /s/ A. R. Johnston
A. R. Johnston, General Contractor
6731 32nd Street, Groves, Texas

"  /s/ Don Woods
Center Enterprises, Inc.
Don Woods, President

"/s/ T. C. Miller
Center Enterprises, Inc.
T. C. Miller, Secretary and Treasurer"