**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Petitioner,**

v.

**W. E. FELKER, d/b/a Coastal Neon & Electric Company, Respondent.**

**No. B–2470.**

Supreme Court of Texas.

July 7, 1971.

Rehearing Denied July 28, 1971.

Rienstra, Rienstra & Dowell, John D. Rienstra, Jr., Beaumont, for petitioner.

George Sladczyk, Jr., Port Arthur, for respondent.

GREENHILL, Justice.

This suit was instituted by W. E. Felker against A. R. Johnston and against Fidelity & Deposit Company of Maryland, a bonding company. Judgment was for Felker against both defendants, and the judgment was affirmed. Johnston v. Felker, Tex., 459 S.W.2d 923. The judgment against Johnston is not here challenged. He is not a Petitioner in this court.

The immediate problem is whether under the circumstances here presented one original contractor may recover against a bonding company on the bond here issued to another original contractor under the Hardeman Act.[1] The courts below held that he can. We disagree. We consider that this case is controlled by the holding of this court in Trinity Universal Ins. Co. v. Barlite, 435 S.W.2d 849 (Tex.1969). Accordingly we reverse as to the bonding company.

The Hardeman Act provides, among other things, for a general statutory scheme whereby a payment bond, executed by an original contractor, is substituted for relief which might be obtained by suits against the owner and his property by subcontractors and those furnishing materials and labor. When the bond is properly executed and recorded, the owner is relieved from all liability to derivative claimants. It may be said that, in general, the bond does not eliminate the constitutional lien of the prime contractor and those who deal directly with the owner. Where such a bond is executed, the statute specifically provides that subcontractors of the original contractor executing the bond must look to the contractor's bond, and not to the owner or his property, for security.

There may be more than one original contractor. If a bond is not executed by such other original contractor, the owner and his property are not protected; and, assuming he has taken the necessary steps, the other original contractor, as well as the contractor executing the bond, may enforce his lien against the property. We are told that Felker, the plaintiff here, has taken such steps; but that matter is not before us. Nor do we have any question of priority of liens. The question is whether Felker, whom we regard as an original contractor as a matter of law, can recover upon

1. Articles 5452 and following, as amended in 1961, and particularly Article 5472d. All statutory references are to Vernon's Annotated Civil Statutes. Emphasis in this opinion is the court's.

the bond of another original contractor under the circumstances here presented. We hold that he cannot.

The facts reflect difficulty in the financing of a shopping center in Groves, Texas. The project was owned by Center Enterprises, Inc., herein called Center. Originally, Center contemplated that one general contractor would be responsible for the entire project. It received bids from five general contractors in the fall of 1965. All of the bids were rejected as being too high.

After some revision of the plans, the Center undertook to put the project together itself, and it called for bids by various firms for particular parts of the work. It received bids from Felker for the electrical work, from Johnston for the concrete work, and from various other persons and firms for other portions of the work.

The bid of Felker for the electrical work was submitted directly to Center on December 10, 1965, in an amount of $33,562.24. Felker's bid was accepted by Center on that date as an original contract. Johnston and Felker were not then acquainted and had no prior dealings.

Apparently because of requirements of Center's financing agency for a bond to prevent other liens, Johnston submitted a proposal as "General Contractor" which was, in fact, an approximation of the bids by the various contractors to the Center. Johnston was to receive a fee for supervision or coordination of the work.[2]

Omitting immaterial provisions, Johnston's proposal reads:

"To: Center Enterprises, Inc.                    January 12, 1966
         Groves, Texas

"I or we agree to furnish all materials, tools, labor, and facilities to construct the building in accordance with the proposed contract, documents consisting of the general conditions, specifications, drawings and addenda thereto as prepared by Lowell Lammers, Architect.

"Based on the revision, we agree to perform the following amount of work in order to put an enclosed building on the site of the ·Groves Shopping Center.

| | |
|---|---:|
| Sitework, including drainage | $ 11,000.00 |
| Roof and Roofdeck | 30,000.00 |
| Structural Steel | 35,000.00 |
| Glass, including doors | 12,000.00 |
| Electrical (including parking) | 35,000.00 |
| Masonry | 28,000.00 |
| Structural Concrete and Slab | 45,000.00 |
| Plumbing (roughed in) | 8,000.00 |
| | $204,000.00 |

"For all the work required in the General Construction listed above, we will construct this building for $204,000.00."

The proposal was signed by "A. R. Johnston, General Contractor" and by officers of the Center. This contract is incorporated by reference in the bond set out below.

2. Included in the record is a letter from Center to Johnston which states: "This letter is written to evidence our agreement that your compensation for supervision of and providing hand tools necessary to the completion of Groves Shopping Center shall be the sum of $400 per week from the inception of the job. . . . In addition to the above, we agree that if the building satisfactorily completed, to enable the company to meet its permanent financing requirements we will pay you $4000 as a bonus." It was dated June 13, 1966, and was signed by the president and secretary-treasurer of Center Enterprises, Inc.

Thereafter Johnston and the bonding company executed the bond in question, which reads as follows (with immaterial portions being omitted):

*"Statutory Payment Bond—Texas*
(Hardeman Act—Private Work)

"(Penalty of this bond must be 100% of Contract amount. This bond and copy of contract must be filed with County Clerk of County wherein owner's property is located.)

"KNOW ALL MEN BY THESE PRESENTS:

"That, A. R. JOHNSTON, CONTRACTOR, Original Contractor (hereinafter called the Principal), as Principal, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND (hereinafter called the Surety), as Surety, are held and firmly bound unto CENTER ENTERPRISES, INC., Groves, Texas (hereinafter called the owner), in the amount of TWO HUNDRED FOUR THOUSAND & NO/100 Dollars ($204,000.00) for the payment whereof the said Principal and Surety bind themselves, jointly and severally, firmly by these presents.

"WHEREAS, the Principal has entered into a certain written contract with the Owner to construct Groves Shopping Center, which contract is hereby referred to and made a part hereof.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall promptly pay claimants for all labor, subcontracts, materials and specially fabricated materials performed or furnished under or by virtue of said contract, then this obligation shall be void, otherwise to remain in full force and effect; labor, *subcontracts*, materials and specially fabricated materials shall be construed in accordance with Article 5452, as amended by the Acts of the Regular Session of the 57th Legislature, 1961.

"PROVIDED, HOWEVER, that the Owner having required the said Principal to furnish this bond in order to comply with the provisions of Article 5472d, added by Acts of the Regular Session of the 57th Legislature, 1961, *all rights and remedies on this bond shall inure solely to such claimants and shall be determined in accordance with the provisions, conditions and limitations of said Article* to the same extent as if they were copied at length herein.

"IN WITNESS WHEREOF, the said Principal and Surety have signed and sealed this instrument, this 13th day of January, 1966."

A. R. JOHNSTON, CONTRACTOR
(Principal)

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND
. Surety

———◆———

Construction started on the project shortly after issuance of the payment bond. Prior to completion of the center, however, difficulties arose and work was interrupted. This suit by Felker followed.

Reduced to simple terms, as relevant here, and using for convenience here numbers not contained in the statute, Article 5472d provides that: (1) whenever a written contract exists "between the owner and

an original contractor," and (2) the original contractor shall furnish a bond in favor of the owner in a penal sum of not less than the total "of the original contract amount," and (3) the condition of the bond being "for the prompt payment of all labor, *subcontractors,* materials * * *," then:

(1) such payment bond shall inure solely to all claimants either giving and filing the requisite notices and claims prescribed, and

(2) if the bond is filed in accordance with the statute, "no suit shall be filed against the owner nor against his property, and any purchaser, lender or other person acquiring an interest in said property shall be entitled to rely upon the record of such bond and contract on file as constituting payment of all claims and liens for labor, or *subcontracts,* or materials * * *, and the owner shall be relieved of all obligations under Articles 5454, 5463 and 5469 hereof."

In *Barlite,* 435 S.W.2d 849 (Tex.1969), the owner made an original contract with Frieden for the building. Frieden proposed to use Martinez for the concrete work, but Martinez was unacceptable because he could not make a solvency bond. So the bonding company, the owner and Frieden worked out a plan whereby Martinez would do the work, but the concrete would be purchased from Barlite. A contract was entered into between the owner and Barlite for Barlite to sell concrete directly to the owner. The bond of the owner and the surety nevertheless included the cost of the entire project including the concrete for the foundation. When Barlite was not paid, suit was brought on the bond.

We held that a contractor (other than the original contractor executing the bond) who furnished materials pursuant to his agreement with the owner was an original contractor and, as such, could not recover under the payment bond of another original contractor. We held that the payment bond covers only the labor and materials, etc., furnished by others to an original contractor for the completion of the project and payment of claims against such contractor. Barlite, being an original contractor under the findings of the trial court, had no claim against Trinity, the surety on the bond of the general contractor, Frieden.

The opinion states:

"Article 5472d does not provide for a bond to guarantee an original contractor payment for labor and material it may furnish * * *. The bond covers only labor, materials, etc. furnished by others to an original contractor for the completion of the project and *payment of claims against such contractor."*

* * * * * *

"Barlite, being an original contractor * * *, had no claim against Trinity, the surety on the bond of another original contractor, Frieden, for payment of the value of concrete, etc. Barlite furnished to * * * the owner."

We specifically rejected the argument that everyone furnishing materials or labor to discharge the bonded contractor's obligation comes under the coverage of the statutory payment bond. That argument is again before us, and was the basis of the opinion of the court of civil appeals in this case. The record here shows that the labor and materials furnished by Felker was a portion of the total amount of the price agreed between Johnston and Center which the bond was written to cover. The same was true in *Barlite.* The test laid down in *Barlite* was whether the material or labor was furnished under and by virtue of Frieden's contract with the owner which the bond covered. We held that since Barlite furnished concrete under and by virtue of its *separate agreement* with the owner, it could not recover under the bond. We said, "The concrete sued for was not furnished under and by virtue of Frieden's contract with owner, but under and by virtue of owner's letter to Barlite. * * * Therefore, the bond does not cover the value of the concrete." 435 S.W.2d at 853.

Upon the trial of this case Felker testified that he furnished all the labor and materials pursuant to his [separate] December 10 contract with Center. He stated that he had periodically billed Center, had been paid for part of the work by Center, had not submitted a bid proposal to Johnston and did not know, when he made his agreement with Center, who the general contractor would be. His testimony leads us to the conclusion that he was an original contractor as a matter of law. His admission that he performed under his own December 10 contract with the owners precludes any recovery under F & D's bond issued to cover payment by Johnston.

Felker does not now dispute that he, at one time, had a contract for the electrical work with Center. He argues, however, that his contract with Center was abandoned when an agreement was reached that Johnston would be the general contractor and that one bond would cover the entire project. Felker says the whole scheme changed from Center acting as its own general contractor to Johnston assuming an obligation for all the construction project. He submits that Johnston, by later adding his signature to the contract between Felker and Center, created a contract between Felker and Johnston. We do not agree with this argument because there is no evidence that the contract between Felker and Center was abandoned; and upon the trial, Felker reaffirmed that he performed under his December 10 contract with Center. Felker was not a subcontractor under Johnston. He was an original contractor with the Center just as Barlite was in the *Barlite* case.

The question of estoppel was discussed in *Barlite*. The opinion states that the elements of estoppel were not present in *Barlite*. It is recognized that several elements of estoppel appear in this case. It appears that the bonding company participated in the arrangements for the contracts of Johnston as "General Contractor" which contained the amount of Felker's electrical work. It is apparent that the bonding

company charged a premium which included the amount of Felker's bid even though Felker's work is not covered by the bond. This was also true of the value of t he concrete work in *Barlite*. We do not wish to be understood as commending such actions, and we are not to be understood as holding that a bond could not be written specifically to cover two or more original contractors. This one was not. This case was brought squarely under the Hardeman Act, the bond of the original contractor Johnston was written under that act to protect only the claimants specified in the act, and our holding in *Barlite* is not distinguishable on the substance of the Hardeman Act. Estoppel was not pleaded, the case was not tried on that theory, no issues were given or requested on estoppel as to the bonding company, and we have no points of error dealing with estoppel as applied to the bonding company.

The judgment of the court of civil appeals as to Johnston is affirmed. The judgment of the court of civil appeals as to the Fidelity & Deposit Company of Maryland is reversed, and judgment is here rendered that Felker take nothing from such bonding company.