Reymundo **TELLEZ**, Administrator of the Estate of Josefa Guerra Tellez, Deceased and Lorenza Tellez, Appellants,

v.

Rosita Duran **TELLEZ**, Appellee.

No. 6471.

Court of Civil Appeals of Texas, El Paso.

Nov. 26, 1975.

Rehearing Denied Dec. 31, 1975.

Arturo R. Aguirre, El Paso, for appellants.

Santiesteban, Kennedy & Martin, Terrence F. Srsen, H. Tati Santiesteban, El Paso, for appellee.

## OPINION

OSBORN, Justice.

This case involves a bailment of $10,-000.00 in cash which Rosita Tellez' husband, Nicolas, left with his mother, Lorenza Tellez, while visiting in El Paso in June, 1972. During that visit, Nicolas was shot and killed, and in August, 1972, when Josefa Tellez, Nicolas' aunt, died, a substantial amount of cash was found in her home. The Appellee contends that Lorenza did not return the money to Nicolas prior to his death and that $10,000.00 of the cash found at Josefa's home belonged to Nicolas. The Estate of Josefa Tellez appeals from an adverse judgment based upon a jury verdict.

We first consider, sua sponte, whether there is a final judgment from which an appeal can be taken. Rosita's First Amended Original Petition seeks judgment against the Administrator of the Estate of Josefa Tellez as defendant, and in the alternative, judgment against Lorenza Tellez as co-de-

fendant. The case was tried on the merits with counsel for both answering defendants fully participating. The jury found that Nicolas delivered $10,000.00 to Lorenza, but failed to find she returned it. It also found that of the money found at the home of Josefa after her death, $10,000.00 belonged to Nicolas and $2,246.40 belonged to Josefa. Thereafter, the trial Court entered a judgment providing that Rosita recover judgment against the Estate of Josefa Tellez in the amount of $10,000.00, plus interest and costs. The judgment makes no mention of the claim against Lorenza Tellez. A judgment which does not dispose of all the issues and all the parties is not final, it is not enforceable and no appeal can be prosecuted therefrom. *Gulf, C. & S. F. Ry. Co. v. Fort Worth & N. O. Ry. Co.*, 68 Tex. 98, 2 S.W. 199, 3 S.W. 564 (1886); *Wagner v. Warnasch*, 156 Tex. 335, 295 S.W.2d 890 (1956); *Community Natural Gas Co. v. Henley*, 11 S.W.2d 206 (Tex.Civ.App.—Texarkana 1928, no writ); *Moore v. Ferrier*, 39 S.W.2d 120 (Tex.Civ.App.—Eastland 1931, no writ).

In order to avoid this reoccurring problem with poorly drafted judgments, the Court in *North East Independent School District v. Aldridge*, 400 S.W.2d 893 (Tex. 1966), sought to provide a way for review of what would otherwise be interlocutory judgments by use of a presumption. 20 Sw.L.J. 227 (1966). In that case, the Court said:

> "When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties."

The Court then went further and said:

> "Under the rule announced, the presumption is that the judgment entered on

October 7, 1964, disposed of Aldridge's cross-action against King-O-Hills Development Company; and in the absence of a contrary showing in the record, we hold that the judgment entered on that date was a final judgment."

That decision has been consistently followed in other cases similar to the one now before this Court. *Hoover v. Barker*, 507 S.W.2d 299 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.), and *Johnston v. Felker*, 459 S.W.2d 923 (Tex.Civ.App.—Beaumont 1970), reversed in part on other grounds, 469 S.W.2d 389 (Tex.1971). We conclude that the judgment entered by the trial Court was a final judgment. We reach this result partly because Rosita sought relief against Lorenza only in the alternative, and having recovered judgment against the Estate, she was not entitled to any judgment against Lorenza under her amended pleading. In any event, the better practice would have been for the trial Court to provide that no relief was granted as against Lorenza Tellez, or that all relief not granted was denied, as suggested in the Aldridge case.

Appellant's first point of error complains of the trial Court's failure to grant a motion for instructed verdict because there was no evidence that the money found at the house of Josefa Tellez was the money left by Nicolas Tellez with his mother, Lorenza Tellez. Admittedly, there was no direct evidence on this issue, but Appellee contends the circumstantial evidence was sufficient to raise a fact issue and support the jury finding. We must necessarily review the evidence to decide the point of error.

Nicolas, Rosita and their children drove from their home in California to El Paso to visit their families. At the time, there were some hard feelings between some of Rosita's family and her husband. Upon arriving at his parents' home on a Sunday afternoon, Nicolas placed on his mother's

bed a large number of small bills which he counted and tied with thread in bundles of $1,000.00 each. According to Rosita's testimony, there was exactly $10,000.00 in cash. All of the money, plus a jewelry box, were left with Lorenza for safekeeping. Lorenza acknowledged receiving the cash from her son, but denied knowing exactly how much money she received from him.

On Wednesday, someone shot at their car while Nicolas and Rosita were in it, but they were not injured, although the windshield was broken. Lorenza said Nicolas came to her house and got his money and the jewelry box on Thursday afternoon. Rosita testified that she and Nicolas and her sister and their children went on a picnic on Thursday, and then back to her sister's home for dinner, and that her husband did not go to his mother's house on that date. She said on Friday they got the car windshield replaced and then Nicolas went to his mother's house for about thirty minutes and brought back the jewelry box he had left there. Rosita's sister corroborated such testimony, and also testified that when Nicolas left her house on Saturday, he told her and Rosita not to worry about him, and that if anything happened to him, his mother still had the money. That evening he was shot and killed.

On Sunday morning Rosita went to her mother-in-law's house to get the money and was told by Lorenza that she had returned the money to Nicolas. Rosita then went to see a Justice of the Peace in Clint, who questioned Lorenza, and she also told him that the money had been returned to Nicolas prior to his death.

On August 5, 1972, the Justice of the Peace at Socorro was summoned to the house of Josefa Tellez, where she had died unattended. The Justice of the Peace testified that a search of the house disclosed a tool box with eight rolls of money tied up with string containing approximately $10,-300.00. He said the rolls contained different sums of money. The Justice of the Peace said he also discovered a tobacco can in the tool box containing approximately $2,020.00 in cash. The actual receipts for the money showed the total amount of cash found in Josefa's house was $12,246.40.

Two neighbors of Josefa testified that a day or two after Nicolas' funeral they saw Lorenza's husband and her son at Josefa's house. They did not see them take anything into the house. The son testified and denied being there on that occasion. The husband did not testify. Rosita acknowledged that the only proof she had about the money was that the visit was made, which the son had denied, and that normally none of Lorenza's family ever went to visit Josefa. Both Lorenza and her son denied giving any money to Josefa.

■ In passing on the "no evidence" point of error, we must consider only the evidence and inferences tending to raise a fact issue and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). There is no direct evidence that either Lorenza's husband or son ever had the money involved in this dispute. Both Lorenza and Rosita testified that Nicolas gave the $10,000.00 to his mother, and the jury so found in answer to Special Issue No. 1. Neither is there any direct evidence that Lorenza's husband or son took anything into Josefa's house. There is also no direct evidence that if $10,000.00 was in fact delivered to Josefa, that prior to her death she added some money to that delivered to her.

■ To conclude that the money found by the Justice of the Peace at Josefa's house after her death belonged in part to Nicolas, it is necessary to infer that Lorenza gave the money to either her husband or her son; to further infer that while the husband or son was at Josefa's house they delivered such money to her; and then to further infer that at some time prior to her death Josefa added some of her own cash to the $10,000.00 delivered to her, in order to account for all of the money found by the Justice of the Peace.

Such inference upon an inference to reach a given result is not permitted because the ultimate fact thus arrived at is too conjectural and speculative to support a judgment. *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d 7 (Tex.1969); 3 McDonald, Texas Civil Practice § 11.28.3 (1970). To permit the establishing of a vital fact by piling inference upon inference violates the rule which requires that a vital fact be established by something more than a mere scintilla. *Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corporation*, 435 S.W.2d 854 (Tex.1968).

Concluding that there was no evidence to raise a fact issue as to the cause of action against the Administrator of the Estate of Josefa Tellez, we sustain the Appellant's first point of error. The judgment of the trial Court is reversed and judgment is here rendered for the Appellant.