**In re Odis BRIGGS, Sr.**

No. 09–97–545CV.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 29, 1998.

Decided March 19, 1998.

Bruce N. Smith, Beaumont, for appellant.

Richard G. Baker, Baker & Zbranek, Liberty, Terrence Holmes, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

PER CURIAM.

Odis Briggs, Sr., submits a petition for writ of habeas corpus from incarceration imposed by the 75th District Court, Liberty County, Texas, Hon. J.C. Zbranek, judge presiding.

The McGahey Trust Fund Association[1] sued Briggs, Frank Mitchell and Horace Lewis for bilking the association's members out of $120,000 collected before 1987 under the pretense that Briggs would handle litigation in which the association's members claimed a particular parcel of land. That suit never materialized, and the association eventually filed suit in the District Court of Liberty County, Texas. This proceeding arises out of the discovery process in the suit against Briggs, Mitchell and Lewis.

The trial court first held Briggs to be in contempt for failing to answer whether records exist of what money he received and what happened to the funds. On May 9, 1996, we granted a writ of habeas corpus, holding in an unpublished opinion that the Fifth Amendment right against self-incrimi-

---

1. The Association is Henry Bert Lewis, Williams Gerald Lewis, Turah Dean Lewis Nichols, Odie Pearl Lewis West, Theresa Lewis Carrington, Creola Moore, and Fred Johnson. Other individ- uals may also be involved but are not identified by name in the documents filed in this proceeding.

nation attaches to testimony regarding the whereabouts of records, although the custodian of records belonging to an association may be compelled to produce those records.

The trial court then ordered Briggs to produce and surrender in open court:

All of the financial records and documents showing all financial transactions involving the money Odis Briggs Sr. collected and held for the land litigation, including but not limited to bank statements (checking accounts, savings accounts, retirement accounts and investments and any and all other types of accounts), cancelled checks, deposit slips, withdrawal slips, and any other documents evidencing banking transactions made, and specifically including the account set forth in Plaintiff's Exhibit 15, whether the account or accounts was, were, is or are in the name of Odis Briggs Sr. or someone else's name, so long as Odis Briggs Sr. had control of the account or money deposited or withdrawn in the account.

At a hearing conducted April 17 and 30, 1997, Briggs refused to comply with the order, invoking his right against self-incrimination contained in the Fifth Amendment of the United States Constitution. On April 30, 1997, the trial court held Briggs to be in both civil and criminal contempt and ordered Briggs to be confined for six months and thereafter so long as he refused to comply with the court's order. The next day, the trial court signed a separate order of confinement, finding Briggs in contempt for failing to answer, "Whether, on or before 29 April 1987, he (Odis Briggs Sr.) appropriated the money (approximately $120,000) raised for the McGahey land litigation venture with the intent to deprive the money from the owners of the money?" Again, the trial court ordered Briggs be confined for six months and thereafter so long as he refused to comply with the court's order, beginning immediately after he is discharged from his contempt found in the April 30 order. One minute later, the trial court entered another order of confinement, holding Briggs in contempt for failing to answer, "Whether, on or before 29 April 1987, there were accounts in which he (Odis Briggs Sr.) deposited the money raised in the McGahey land litigation venture other than the account named in Plaintiff's Exhibit No. 16 (an exhibit Odis Briggs Sr. produced to the court to show accounts in which he had deposited the money, hereby incorporated by reference)?" Again, the trial court ordered Briggs to be confined for six months and thereafter so long as he refused to comply with the court's order, beginning immediately after he is discharged from his contempt found in the April 30 order and the first May 1 order. A second writ of habeas corpus, filed May 16, 1997, was denied without opinion.

At a hearing conducted December 11, 1997, when asked by counsel "whether on or before April 29th, 1987, you appropriated the money, approximately $120,000 raised for the McGahey land litigation venture with the intent to deprive the money from the owners of the money?", Briggs testified, "The answer is is [sic] that it was appropriated before 1987." Briggs also testified he placed McGahey funds into accounts other than 32101097431, including an account (80–3271–9) closed in 1984 for lack of funds, and two accounts (nos. 653632 and 984825) in what was then Gateway National Bank but which later became Texas Commerce Bank. Briggs claimed he had mislaid the bank records for those accounts and could not obtain records from the bank because the records had been purged. The trial court held Briggs had purged himself of contempt for those matters, but found the records are available to Briggs and could have been produced. Concluding Briggs is still in contempt for his failure to comply with the court's order to produce the records, the trial court declined to order Briggs's release.

Confined since April 29, 1997, Briggs was released on bond January 6, 1998, pursuant to our order in this proceeding. Briggs argues the first April 30 confinement order is a criminal contempt order for which he has already served the maximum sentence. Alternatively, he argues that if this order was intended to be coercive, it is void because it fails to recite the manner in which he may purge himself of contempt. The order of which he speaks is clearly both punitive and coercive in nature. Viewed in its entirety,

the order is subject to only one reasonable interpretation: that in order to secure his release from confinement, Briggs must produce all of the financial records for the funds he held for the Association.

Briggs next argues his confinement is illegal because compliance is impossible. The involuntary inability to comply with an order is a valid defense to contempt, for one's noncompliance cannot have been willful if the failure to comply was involuntary. *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex.1995). The relator bears the burden to conclusively establish his inability to comply. *Id.* Briggs contends he presented uncontroverted evidence that no documents existed regarding his accounts and transactions. Briggs did testify that he did not have any records other than those kept in a box which was briefly in the possession of defendant Mitchell. Briggs claimed the financial records had been in that box at one time, but he never checked the box from the time he retrieved it from Mitchell in 1983 or 1984, to the day he brought the box to court. When he brought it to court, the box did not contain financial records. Briggs stated he was not aware of any other location where the records might be. At the hearing conducted January 29, 1996, Briggs claimed the paperwork in the box was all he had in his possession, but that he had the ability to produce records in the possession of Arthur Gilmore and Gaylyn Cooper.

The trial court judges the credibility of the witnesses and the weight to be given their testimony. *Ex parte Rosser*, 899 S.W.2d 382, 386 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). The trial court may disregard testimony of an interested witness if it could not be readily contradicted if untrue, or if there are circumstances tending to discredit or impeach it. *Id.* (*citing Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989)).

Clearly, Briggs had statements in his possession at one time. He claimed these records were in a particular location—the box—then claimed they were not in the box and he did not know where they were. The people Briggs supposedly left the records with did not testify to corroborate his story.

Briggs testified the bank purged its files and cannot provide records of the transactions in question, but no one from the bank testified to corroborate Briggs's claims. What the trial court heard, then, is the uncorroborated testimony of an interested witness which was controverted or impeached in a number of respects. In particular, his testimony regarding the contents of the box changed, as did his testimony regarding the number of accounts into which he placed the McGahey funds.

Judge Zbranek did not believe Briggs when Briggs claimed he could not locate and produce the records of the transactions involving the McGahey funds. We cannot say the court's findings of contempt are without support in the record. The relator, Odis Briggs, Sr., failed to conclusively establish his entitlement to the relief sought. The application for writ of habeas corpus is denied. Our previous order granting bail is withdrawn and Relator is remanded back to the custody of the Liberty County Sheriff.

WRIT DENIED.