**Ex parte Nikki Marie JONES,
Appellant.**

Nos. 01–99–01159–CR, 01–99–01162–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 21, 2000.

Danny K. Easterling, Houston, for Appellee.

John B. Holmes, William Delmore, III, Houston, for Appellant.

Panel consists of Justices O'CONNOR, HEDGES, and PRICE.*

## OPINION ON MOTION
## FOR REHEARING

HEDGES, Justice.

Appellee, Nikki Marie Jones (Mother), has filed a motion for rehearing. We overrule the motion for rehearing, but substitute the following for our original opinion.

Mother, was charged with interference with child custody. The trial court granted her habeas corpus relief by dismissing her criminal indictment, which the State challenges. We reverse the trial court's order dismissing the criminal indictment, reinstate the indictment, and remand the cause.

### Factual Background

In 1996, the 310th Family District Court of Harris County appointed Gilbert Joseph Corcoran (Father) as sole managing conservator of six-year-old Brittany Corcoran, appointed Mother as possessory conservator, and established the times when Father and Mother would each have possession of Brittany.

The following year and in a different court, Father filed a request for writ of attachment, alleging that Mother violated child custody provisions of the 1996 decree by refusing to surrender Brittany to school authorities. On August 25, 1997, Judge Squire of the 312th Family District Court of Harris County ordered that Mother immediately return Brittany to Father ("the 1997 order to return Brittany").

Three months later, on November 26, 1997, Father filed a motion for contempt in yet a different court, the 247th Family District Court of Harris County, alleging that Mother violated the 1997 order to return Brittany. On March 6, 1998, after a show cause hearing, Judge Reiter of the 247th Family District Court issued the following order ("the 1998 contempt order"), which found that Mother had violated the 1997 order to return Brittany, and that she "should be compelled to comply therewith."

... that [Mother] be and she is hereby found and held in coercive contempt and shall be remanded to the custody of the Sheriff of Harris County, Texas being held thereby in confinement from day to day until she causes or until she provides information which causes the [child] to be safely delivered to the possession of [Father] as aforesaid, and until the Sheriff has been so advised to the Sheriff's satisfaction by [Father]. It is further:

ORDERED that upon the safe delivery of [child] to the possession [Father], the Sheriff of Harris County shall forthwith or as otherwise directed by the court, safely deliver [Mother] into open court.

ORDERED that upon such delivery of [Mother] to this court, being after the safe return of [child] to [Father], the court shall proceed to consider the remaining issues herein including that [Mother] shall show what cause she has as to why she should not be punished by criminal contempt for failing to return [child] as ordered on August 25, 1997 by

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Judge James Squier, as well as the terms and conditions of access to the child as sought by her and by [Father] after the jury trial completed November 26, 1997.

Mother was incarcerated that same day, on March 6, 1998, pursuant to the 1998 contempt order. Brittany was returned to Father on March 24, 1998. On April 1, 1998, Mother applied to the 247th Family District Court for habeas corpus relief, asserting that she was being illegally restrained since Brittany had already been returned to Father. Mother was released from jail on April 4, 1998—29 days from the start of her incarceration and 11 days after Brittany had been returned to Father.[1]

A year later, on May 19, 1999, the State filed an indictment in yet another court, the 351st District Criminal Court (case number 813454), charging Mother with the criminal offense of interference with child custody. In response, Mother filed an application for habeas corpus relief (case number 816902), asserting that the subject matter in the indictment was the same as that in the motion for contempt resulting in her previous 29 day incarceration. Accordingly, she contended that the criminal prosecution was barred by her Fifth Amendment[2] protection against being twice placed in jeopardy for the same offense.

At the habeas hearing, the 351st Criminal District Court took judicial notice of the contents in the habeas file and in the underlying interference with child custody case. Mother introduced into evidence a copy of the indictment in case 813454, Judge Squier's 1997 order to return Brittany, Father's original motion for contempt, Judge Reiter's 1998 order holding Mother in contempt, and Mother's 1998 application for writ of habeas corpus to the 247th Family District Court. Mother also introduced her affidavit, averring that she had been incarcerated for 29 days for failing to return Brittany after a court-ordered visitation—the same conduct for which she was indicted in the criminal case.

The 351st District Criminal Court concluded that double jeopardy barred prosecution of the interference with child custody charge, and the indictment was dismissed. Specifically, it held that the family court's 1998 contempt order was a constructive criminal contempt conviction. The court based this holding on *Ex parte Rhodes*, 974 S.W.2d 735, 740 (Tex. Crim.App.1998), which held that the following elements must be proved in a criminal contempt conviction: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Id.*

Additionally, the 351st District Criminal Court held that the *Blockburger*[3] test was satisfied—that the conduct for which Mother was found in contempt was a lesser included offense of the crime charged in the indictment.

## Sole Point of Error

The State contends that the court erred in holding that Mother's prosecution would

---

1. Mother complains that Father and his counsel deliberately did not advise the Sheriff promptly of Brittany's return to his custody, as was specified in the contempt order. There is no evidence in the record to support this assertion.

2. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

3. To determine whether a criminal contempt conviction bars further prosecution for the same offense, the United States Supreme Court uses the "same-elements" test from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* test evaluates whether each offense contains an element not present in the other. *Id.* If so, the offenses are not considered the "same offense" for double jeopardy purposes, and a successive prosecution is not barred. *Id.*

violate the double jeopardy clause because of her earlier 29 day confinement for contempt. We agree.

## Standard of Review

■ This issue is a mixed question of law and fact that we review *de novo.* See *Ex parte Sheridan,* 974 S.W.2d 129, 131 (Tex.App.—San Antonio 1998, pet. ref'd).

## Analysis

■ The double jeopardy clause protects against the risk of multiple punishments for the same offense and against the risk of successive prosecutions. *U.S. v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). Double jeopardy principles generally do not apply to an order assessing solely coercive confinement when a contemnor can obtain release by purging contempt. *Yates v. United States,* 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957); *Ex parte Hudson,* 917 S.W.2d 24, 26 (Tex.1996). It is well established that a contempt conviction is "criminal" if it punishes for past violations, and "civil" if it attempts to coerce future action. *Ex parte Williams,* 799 S.W.2d 304, 306 (Tex.Crim.App.1990).

■ We disagree with the 351st District Criminal Court's ruling that the family court's 1998 contempt order was a constructive criminal contempt conviction. The 1998 contempt order attempted to coerce the future actions of Mother in returning Brittany to Father. The order contained no provision punishing Mother for past action. In fact, the order reserved the question of holding Mother in criminal contempt until a later time. Thus, the family court had clearly found Mother in civil, not criminal, contempt.

■ The 351st District Criminal Court's reliance on *Rhodes* was misplaced. In *Rhodes,* the contempt order was punitive because the judge assessed fines as "punishment" for Rhodes's contempt. 974 S.W.2d at 737. The court did not incarcerate Rhodes to coerce him to comply with the order he violated. *Id.* In contrast, Mother's contempt order was coercive, not punitive. Accordingly, the Fifth Amendment protection against successive prosecutions for the same offense is not implicated in this case. *See Yates,* 355 U.S. at 74, 78 S. Ct at 133; *Hudson,* 917 S.W.2d at 26.

■ Mother contends that her 11 days in jail-the time remaining after she returned Brittany in compliance with the 1998 order—constituted "punitive" incarceration. In support, Mother relies on *Cheff v. Schnackenberg,* 384 U.S. 373, 375, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). Cheff was charged with violating an order from the Court of Appeals. *Id* . The Court of Appeals denied his jury demand, found him guilty of criminal contempt, and sentenced him to six-months imprisonment. *Id.* Cheff challenged whether the denial of his jury demand was constitutional. *Id.* The Supreme Court held that Cheff was properly convicted without a jury in the criminal contempt trial. *Id.* The Court noted that the six-month sentence was "punitive" because there was no need to assure future compliance with the order. 384 U.S. at 377, 86 S.Ct. at 1524.

■ Contrary to Mother's position, *Cheff* does not stand for the proposition that when the purging provision of a coercive contempt order is satisfied, any additional time spent in jail is "punitive" contempt time. We are aware of no authority holding that when a family court issues a strictly coercive contempt confinement order, any time spent in jail beyond the fulfillment of the contempt purging condition, would be transformed into punitive contempt time to establish a double jeopardy bar to later criminal prosecution. It is the order of the court, not the circumstances of confinement, that defines the nature of the contempt order.

Alternatively, Mother suggests that the 1998 contempt order had both a civil and a criminal component. We disagree. As evidenced by the clear language of the 1998

order set forth above, the family court found Mother in civil, not criminal, contempt.

Mother also contends that the criminal court properly found that the failure to return Brittany was a lesser included offense of the interference with child custody charge. This finding is irrelevant, however, if the contempt order specified coercive rather than punitive measures, as we have held.

Finally, appellant invites us to hold that in this case, Texas Constitution article I, § 14 bars the State's prosecution of her on the interference with child custody charge. However, because the Court of Criminal Appeals has held that the state and federal double jeopardy provisions are conceptually identical, *Stephens v. State,* 806 S.W.2d 812, 815 (Tex.Crim.App.1990) and we have already held that the State's prosecution of appellant on the interference with child custody does not violate the federal double jeopardy provision, we decline appellant's invitation.

### Conclusion

We sustain the State's sole point of error, reverse the 351st District Criminal Court's August 26, 1999 order granting Mother habeas corpus relief, reinstate the indictment in case number 813454, and remand the cause to the criminal court.