In re Ben "Benji" JOHNSON.

No. 09–04–324 CV.

Court of Appeals of Texas, Beaumont.

Submitted on Aug. 6, 2004.

Decided Dec. 9, 2004.

David J. Van Susteren, Houston, for appellant.

Anne Pickle, Seale, Stover, Bisbey & Morian, Jasper, for appellees.

Before McKEITHEN, C.J., BURGESS, and GAULTNEY, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Our opinion of October 7, 2004, is withdrawn, and this opinion is substituted.

The trial court found relator, Ben "Benji" Johnson, in contempt of court and committed him "to the Jasper County Jail until such time as he deposits the sum of $24,150.32" into the registry of the court. The contempt order finds he is able to deposit the funds. In this habeas corpus proceeding, relator says he has been imprisoned for nonpayment of a debt in violation of the Texas Constitution. *See* TEX. CONST. art. I, § 18.

The underlying case is the guardianship of Jimmy Mays. Mays' daughter, Jemece Mays Richard, has been appointed his guardian. As guardian, Richard is attempting to recover Mays' property. *See* TEX. PROB.CODE §§ 768, 877 (Vernon 2003 & Vernon Supp.2004).

Mays' wife, Rose Mays, who divorced Jimmy in 2001 and remarried him in April 2004, received a check in the mail payable to Jimmy Mays in the amount of $24,150.32. The trial court instructed Rose Mays to pay the money into the registry of the court. Rose deposited the check into a credit union account, withdrew the entire amount in cash, and gave the money to relator for safekeeping.

Relator testified he placed the money under a pine tree where he could watch it from his porch. When Rose Mays returned for the money, relator went to the tree and discovered the money was gone. After hearing this explanation, the trial court ordered relator and Rose Mays to pay the money into the registry of the court by 9:30 the next morning. When they failed to do so, he found them in contempt of court and put them in jail.

Payment of a debt may not be coerced by imprisonment. *See* TEX. CONST. art. I, § 18 ("No person shall ever be imprisoned for debt."); *see Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993). However, not every obligation to pay money is a "debt" within the meaning of Article I, Section 18 of the Texas Constitution. *See id.; Ex parte Davis,* 101 Tex. 607, 111 S.W. 394, 396 (1908) ("There are many instances in the proceedings of the courts where the performance of an act may be enforced by imprisonment and would not come within the prohibition of the Constitution, although it might involve the payment of money."). For example, the obligation to support one's spouse or child is "a legal duty arising out of the status of the parties," not out of a contract, and is not considered a debt. *See Ex parte Hall,* 854 S.W.2d at 658. In *Ex parte Hall,* the Court explained that a person may also contract to support a spouse or child, "and that obligation, to the extent it exceeds his

legal duty, is a debt." *Id.* The obligation to pay money arising out of a contract is a debt within the meaning of Article I, Section 18. *See generally Ex parte Duncan,* 462 S.W.2d 336, 337 (Tex.Civ.App.-Houston [1st Dist.] 1970, orig. proceeding) (citing *Ex parte Yates,* 387 S.W.2d 377 (Tex. 1965)).

In *Ex parte Sutherland,* 526 S.W.2d 536, 539 (Tex.1975), the Court held an obligation to surrender specific property in the division of a community estate was not a debt. Sutherland was placed in jail for contempt for failing to pay his former wife one-half of retainer pay received by him as a member of the Fleet Reserve. The Supreme Court explained as follows why there was "no problem here of imprisonment for debt in the constitutional sense":

> Relator was constituted a trustee by the court to collect and remit to the clerk the one-half of the pay awarded to the wife. In performing that duty he will not be paying a debt but will be surrendering the share to which his former wife is legally entitled. His confinement to compel payment of the arrearage in the wife's one-half of the retainer pay is not imprisonment for debt within the meaning of Article 1, Section 18, of our Constitution.

*Id.* Sutherland was not ordered to pay a debt; rather, he was ordered to surrender property to which another person was legally entitled. Surrendering another's property, even though the property was money, was not payment of a debt.

In *Ex parte Gorena,* 595 S.W.2d 841, 846–47 (Tex.1979), a case involving an obligation to make monthly payments of retirement benefits to a former spouse, the Court said "[n]umerous cases in other jurisdictions have affirmed a trial court's order holding a trustee or other fiduciary in contempt for failure to turn property, including money, over to third persons."

*Id.* The Court approved reasoning which likened a spouse's status to that of a trustee in considering whether an obligation to pay was a debt. *Id.* (approving "the decision and reasoning" in *Ex parte Anderson,* 541 S.W.2d 286 (Tex.Civ.App.-San Antonio 1976, orig. proceeding)). In *Ex parte Buller,* 834 S.W.2d 622, 626 (Tex.App.-Beaumont 1992, orig. proceeding), this Court held a trustee or other fiduciary could be jailed for contempt in refusing to turn over funds.

█ Relator's obligation is based on his possession for safekeeping of property the trial court had previously ordered placed in the registry of the court. That the property is money does not mean his legal duty is a debt. The trial court found he is still able to place the money in the registry of the court. He is holding another's property and has been ordered to surrender the property. We conclude relator is not being imprisoned for nonpayment of a debt within the meaning of Article I, Section 18 of the Texas Constitution.

█ Relator says in his reply brief that he does not have the cash. He says he "cannot use personal funds to satisfy the Order because he is indigent," and notes he has moved to proceed in forma pauperis in this case. We understand this argument to be there is no evidence he still has the asset entrusted to him in his possession, he cannot comply, and the order is therefore void. *See Ex parte Chambers,* 898 S.W.2d 257, 259–60 (Tex.1995).

██ A contempt order imposing a coercive restraint is void if the condition for purging the contempt cannot be performed. *Ex parte Dustman,* 538 S.W.2d 409, 410 (Tex.1976); *Ex parte Thetford,* 369 S.W.2d 924, 925 (Tex.1963). "[T]he issue in habeas corpus review is whether the relator has conclusively established that [the relator] was involuntarily unable

to pay." *See Ex parte Chambers,* 898 S.W.2d at 262 (criminal contempt); *see also In re Briggs,* 965 S.W.2d 743, 745 (Tex.App.-Beaumont 1998, orig. proceeding) (civil contempt).

Once the money was traced into his possession, relator was presumed to possess the entire amount traced, and he was required to show he was not in possession of all or part of the traced amount. *See generally Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). The trial court determines the credibility of the witnesses and the weight to be given their testimony. *In re Briggs,* 965 S.W.2d at 745. Relator admits he had possession of the cash, but he says it must have been stolen after he placed it under a pine tree where he could watch it from his porch for ten or twelve days until Rose Mays returned for the money. The trial court was not required to accept an incredible account. On this record we cannot say relator has established involuntary inability to comply.

The relator is not entitled to relief on the issue originally presented to this Court. Accordingly, the issue is overruled.

## OPINION ON MOTION FOR REHEARING

■ In a motion for rehearing, relator argues his right to due process of law was violated because he was not given proper notice of the contempt, was not given the opportunity to retain counsel, and did not have an opportunity to defend himself at a contempt hearing.[1] Relator says he never had an attorney "at any point during the evidentiary hearing on the Motion to Show Cause." Relator also says the court signed its order finding him in contempt of

court without holding a contempt hearing. Relator further states:

[T]he district court apparently relied on the show cause hearing of July 21, 2004, at which [relator] was merely testifying as a witness (which he did voluntarily without the necessity of a subpoena), without counsel, and with no knowledge that the judge might place him in jail the very next day.

■ Contempt of court proceedings may be civil or criminal. *See Ex parte Werblud,* 536 S.W.2d 542, 545–46 (Tex. 1976). *See In re Houston,* 92 S.W.3d 870, 876 n. 2 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding). Criminal contempt is punishment for past conduct. *Id.* Civil contempt is coercive, and the contemnor may obtain his release by complying with the court's order. *Id.*

■ The distinction between civil and criminal contempt impacts the due process analysis. *See International Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 826–27, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *see also Hicks v. Feiock,* 485 U.S. 624, 631–32, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Criminal penalties may not be imposed upon one who has not been afforded the Constitutional protections required of criminal proceedings. *See Bagwell,* 512 U.S. at 826, 114 S.Ct. 2552. However, civil coercive sanctions designed to compel future compliance may be imposed in a civil proceeding upon notice and an opportunity to be heard. *Id.* at 827, 114 S.Ct. 2552.

■ The due process analysis is also impacted by whether the contempt is direct or constructive. Direct contempt occurs in the presence of the court. *See Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex.1995). Contempt outside the presence of the court is constructive contempt.

---

1. Rose Mays has filed a petition for writ of habeas corpus.

*Id.*; *see also Ex Parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). Direct contempt that is witnessed by the judge may be summarily punished. *See In re Oliver,* 333 U.S. 257, 274, 68 S.Ct. 499, 92 L.Ed. 682 (1948). No further proof is required. *Id.*; *see also generally Ex Parte Daniels,* 722 S.W.2d 707, 709 (Tex.Crim.App.1987) (criminal contempt). However, contempt not personally observed by the judge requires notice and an opportunity to be heard on disputed facts. *See Ex parte Gordon,* 584 S.W.2d at 689–90. Absent adequate notice, a contempt order is a nullity. *In re Acceptance Ins. Co.,* 33 S.W.3d 443, 448–49 (Tex.App.-Fort Worth 2000, orig. proceeding). Finally, the nature of the sanction is a factor to be considered in determining due process. *See generally Ector County Indep. Sch. Dist. v. Hopkins,* 518 S.W.2d 576, 581 (Tex.Civ. App.-El Paso 1974, no writ). Jail is a deprivation of liberty, whether the contempt is civil or criminal, direct or constructive.

This is a civil contempt order designed to coerce relator to comply with the trial court's order. The contempt is constructive. The hearing at which relator testified was held to resolve a motion to show cause, and to convert the temporary guardianship into a permanent one.[2] The record does not reflect relator was represented by counsel. At the conclusion of the testimony, the following exchange occurred between Richard's counsel, Mays' counsel, and the trial court:

> [Richard's Counsel]: We would like to ask that [Rose] be found in contempt of court, put in jail, and ask that the property be returned to the temporary guardian.
>
> * * *

[The Court]: Are there pleadings on file that I can find her in contempt?

[Mays' Counsel]: I didn't see it in the file.

[Richard's Counsel]: I don't believe that I have asked for a finding of contempt because there was not a prior written order.

[Mays' Counsel]: No, sir, Your Honor.

[Richard's Counsel]: It was ordered that she bring the money to the registry of the court, orally.

[The Court]: I just orally asked her to do that. I believe she's admitted that. Okay. I'm going to find that . . . the money, the $24,150 should be deposited in the registry of the district court of Jasper County, Texas. I'm going to order that done by 9:30 in the morning. If the money is not deposited in the registry of the district court of Jasper County, Texas, I find not only Mrs. Mays, but Mr. Johnson, Rev. Johnson in contempt of this court.

* * *

[Mays' Counsel]: Your Honor, we understand the position of the Court; however, we've not had proper notice of this hearing.

[The Court]: She keeps saying you have. I'll set the hearing later. Do we understand what's going to happen in the morning at 9:30?

* * *

[The Court]: Mrs. Mays, do you understand that you can be in contempt of court; and if you are in contempt of court, it's very possible you can go to jail until you purge yourself of that

---

**2.** In his motion for rehearing, relator says Jimmy Mays is deceased. The parties do not address the effect of the ward's death on this

civil contempt proceeding. *See* Tex Prob. Code Ann. § 745(a)(2) (Vernon Supp.2004).

contempt. Mr. Johnson, did you understand what I said?

\* \* \*

[The Court]: I'll see you in the morning at 9:30, and one of you better have that money.

\* \* \*

[The Court]: Deposit to the registry of the District Clerk of Jasper County, Texas and if it's not, I want a written order. I'm going to sign that order today. But I'm giving you notice, Mrs. Mays; and I talked to the preacher out there, Brother Johnson. He knows to have it here at 9:30 in the morning. And he knows what's going to happen in the event it's not here.

Relator's explanation for his failure to deliver the cash involves disputed facts concerning out-of-court conduct. He was entitled to reasonable notice of the contempt charge and a reasonable opportunity to be heard. *See In re Houston*, 92 S.W.3d at 876. Reasonable notice will provide him with an opportunity to consult counsel, present witnesses, or otherwise prepare his defense.

The notice provided to relator, which the record reflects was less than twenty-four hours, was not sufficient. Johnson was a witness at the show cause hearing. He was not the respondent. Considering the inadequacy of the notice provided in this case, the contempt order is a nullity. *See In re Acceptance Ins. Co.*, 33 S.W.3d at 448–49. Relator's first issue on motion for rehearing is sustained. We grant the petition for writ of habeas corpus and order the relator Ben "Benji" Johnson released from confinement and from the bond previously ordered.

WRIT GRANTED.

DON BURGESS, Justice, concurring and dissenting.

I concur with opinion of the Court on motion for rehearing. Because I disagree with the majority's opinion on the substantive issue originally presented in the relator's petition, I respectfully dissent. While this is a sparse record, this much we do know:

1—Jemece Richard was appointed temporary guardian of Jimmy Mays.

2—Rose Mays deposited a check from Louisiana–Pacific to Jimmy Mays into the Texaco Credit Union and then withdrew the cash.

3—There was a prior hearing where the Judge verbally ordered Rose to pay the money into the registry of the court.

4—Rose gave Johnson the money after she was told to "bring [the money] to court."

5—The hearing conducted on July 21, 2004 was not a contempt hearing, "because there was not a prior written order."

6—At the conclusion of the July 21, 2004 hearing, the court verbally ordered Rose and Johnson to deposit $24,150 into the registry of the court by 9:30 a.m., July 22, 2004.

7—A written order reciting the verbal order and setting a hearing for 10:30 am on July 22, 2004. The order was signed July 22, 2004.

8—The order committing Johnson to jail recites the verbal order of July 21 and finds Johnson is able to deposit the funds but has refused to do so and finds Johnson in contempt, but does not recite that a hearing was held.

Therefore, based solely on the record, Mr. Johnson is, at best, a gratuitous bail-

ee[1] of the money from Ms. Mays or, at worst, a thief of the money from Ms. Mays or Ms. Richard. As I view the record, Mr. Johnson had no knowledge of the dispute between Ms. Mays or Ms. Richard nor any knowledge of the verbal order that Ms. Mays deposit the proceeds of the check into the registry of the court. All Mr. Johnson knew was Ms. Mays asked him to keep the money until she could take it to court. Under these facts, Mr. Johnson clearly had no fiduciary relationship with Ms. Richard, the court or Ms. Mays, for "[a] bailment generally does not create a formal, fiduciary relationship between bailee and bailor." *Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 637 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (citing *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex.App.-Houston [14th Dist.] 1998, pet. denied)). Johnson's only relationship (bailor/bailee) was with Ms. Mays and either he negligently (failed to take proper care of the money) or intentionally (stole the money) breached that relationship.

If the trial court and the majority believes Johnson negligently breached his duty,[2] then this is a pre-suit, pre-judgment civil commitment under the guise of contempt. If the trial court and the majority believes Johnson intentionally breached his duty,[3] then this is either a pre-suit, pre-judgment civil commitment under the guise of contempt or a pre-trial, pre-sentence criminal commitment under the guise of contempt.[4] Neither of these three rationales are constitutional.

A similar case, not mentioned by the majority, is *Currie v. Drake*, 550 S.W.2d 736, 741 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.). The court stated:

At the conclusion of the hearing the court entered an order directing that actions be taken. A portion of that order directed that Holt and Currie return moneys which were owed to the estate. The order does not direct appellants to deliver to the executor a specific identified fund in being, but only to repay the amount of money previously received. Consequently, this portion of the order is a direction for payment of a debt, and if the parties do not comply, it would not be enforceable by contempt. Tex. Const. art. I, s 18. The proper remedy would have been a judgment on which execution might be levied. *Northwestern Fuel Co. v. Brock*, [139 U.S. 216, 220, 11 S.Ct. 523, 35 L.Ed. 151 (1891)], and *Salgo v. Hoffman*, 521 S.W.2d 922, 925 (Tex.Civ.App.Dallas 1975, no writ). Accordingly, we reverse the order and remand the cause to the probate court with instructions to conduct a hearing

1. Cash may be the subject of a bailment. *See Tellez v. Tellez*, 531 S.W.2d 368, 369 (Tex.Civ. App.-El Paso 1975, no writ); *Bloom v. Bloom*, 767 S.W.2d 463, 469 (Tex.App.-San Antonio 1989, writ denied).

2. "A bailee has the duty to exercise ordinary care over the goods and is therefore 'responsible' for the bailor's goods." *Sisters of Charity of the Incarnate Word, Houston, Texas v. Meaux*, 122 S.W.3d 428, 431 (Tex.App.-Beaumont 2003, pet. denied).

3. "Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property." TEX. PENAL CODE ANN. § 31.02 (Vernon 2003).

4. The majority has certainly made it easier to retrieve stolen money; one may simply order the bank robber to return the money and if there is no compliance, hold the robber in contempt and civilly commit the robber until the money is returned. A novel approach but with definite constitutional infirmities.

wherein testimony may be taken concerning the payment of the claim and offsets, if any, and render a judgment accordingly.

Here, too, the proper remedy is not an order of contempt, but a suit for conversion. I would grant the writ, release Mr. Johnson and not subject him to further contempt proceedings.