**Opinion issued August 30, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-10-00713-CV

———————————

**KENT ALLEN TRAMEL, Appellant**

**V.**

**LORI ANN TRAMEL, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 06-DCV-151515**

---

## MEMORANDUM OPINION

Kent Allen Tramel appeals the trial court's judgment in a divorce and suit affecting the parent-child relationship (SAPCR). In three issues and four unnumbered sub-issues, appellant contends that (1) the trial court was without

plenary power with respect to this case when it issued the final divorce decree and order of contempt,[1] (2) there is no evidence to support the trial court's award of $35,000 in unpaid temporary alimony, and (3) there is no evidence to support the trial court's award of $54,000 in spousal maintenance. We affirm.

## BACKGROUND

On August 17, 2006, Kent filed for divorce from Lori Ann Tramel, his wife of almost twenty years. One week later, Lori filed her counter-petition seeking, among other things, sole managing conservatorship of the couples' four youngest children. By temporary orders entered September 22, 2006, the trial court appointed both parents joint managing conservators and set forth each parent's rights and duties. Kent was ordered to pay child support on the 20th day of each month beginning on September 20, 2006.

Almost two and half years from the filing of the original petition, and more than two dozen hearings later, a bench trial was held on April 7, 2009, at the conclusion of which the trial judge stated on the record: "Now, I'm granting the divorce between Kent Allen Tramel and Lori Ann Tramel, effective immediately. It is granted now." The court also noted the need to interview the youngest child prior to ruling on the custody and outstanding property issues. When asked if the

---

[1] Even were Kent to concede his point as to plenary power, he argues in a sub-issue, the trial court was barred from holding him in contempt because of *res judicata*, collateral estoppel, double jeopardy, and because the motion to enforce did not meet the standard of a charging instrument.

2

temporary orders were still in effect, the judge replied: "the temporary orders survive until the final is signed."

Three months later, on July 9, 2009, the trial court ruled on the outstanding custody and child support issues (July Ruling). Among other things, the court found that Kent had violated the temporary orders by failing to pay child support for September, October, November, and December 2007. The trial court again named both parents as joint managing conservators of the children and provided special access orders with respect to the youngest child.

On January 14, 2010, Lori filed a motion seeking enforcement of previous child support orders. That same day, pursuant to the court's directive to Kent's attorney to draft a decree based upon the court's previous rendition, Kent filed a proposed draft along with a motion to enter and sign the decree of divorce. After several subsequent hearings during which counsel for both parties had opportunities to weigh in on the terms of the final decree, the trial court, on May 3, 2010, issued what it entitled a "Final Decree of Divorce and Order of Contempt" (May Decree). Kent contends that the May Decree is consistent with the July Ruling as to spousal maintenance and the money judgment for unpaid temporary alimony, but varies dramatically from the July Ruling with respect to the terms of contempt and the amount of child support arrearages owed. The trial court's July Ruling found that Kent had failed to pay $2,100 a month in child support for

3

September, October, November, and December 2007 in violation of the temporary orders. The May Decree sets out his failure to pay $2,100 a month in child support for only October, November, and December 2007 and that he owed a total of $40,843.31 in child support arrearages, including interest for the period between October 20, 2007 and August 20, 2009.

## Discussion

Kent's first issue contends that the trial court's plenary power had lapsed prior to the May Decree. In four sub-issues, Kent further argues that in addition to one or more of the doctrines of *res judicata*, collateral estoppel and double jeopardy operating to bar the trial court from its contempt finding, the motion to enforce did not meet the standard of a charging instrument.[2]

### 1) Plenary Power

Kent argues that, having orally granted the parties' divorce at the conclusion of the April 7, 2009 bench trial, the trial court rendered its judgment final when it signed and filed the July 2009 Ruling with the District Clerk. He maintains that

---

[2] Kent claims on appeal that the conduct of Lori, and her then-current counsel, subjected him to "triple jeopardy" and constitutes "malicious prosecution." Kent has waived these issues. *See* TEX. R. APP. P. 38.1(i); *see also Howeth Inv., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 902 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (declining to reach, for want of citation to authority and legal analysis); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to briefing).

since the July Ruling decided all outstanding issues, including child support arrears, the entry of the May 2010 Decree was no more than the mere ministerial act of entry of judgment.  *See Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex. App.—Fort Worth 2004, no pet.)  (discussing three stages of judgment: rendition, signing, and entry; stating that entry of judgment is purely ministerial act).  As such,  Kent reasons, not only did the trial court's plenary power expire on August 8, 2009 — 30 days after the July 9, 2009 rendition of judgment — but those portions of the May 2010 Decree that vary from the July 2009 Ruling are void.  Lori's argument maintains that the May 2010 Decree, not the July 2009 Ruling, was the final judgment and, as such, the timeline of the court's plenary power was not an issue.  Neither party argues, and we do not determine, the precise nature of the July 2009 Ruling.  What that order is *not*, however, is a final SAPCR order[3] that comports with the Family Code's requirements for such orders.   *See* TEX. FAM. CODE ANN. §105.006(a) (West 2008) (requiring final SAPCR orders include, *inter alia*, social security numbers, driver's licenses, mailing addresses, and phone numbers for parties to suit).  The July 2009 Ruling contains none of these requirements, but all are present in the May 2010 Decree.  The latter document also contains a Mother Hubbard clause and approval as to both form and substance executed by counsel to both parties.

---

[3]     *See* TEX. FAM. CODE ANN. § 101.032(a) (West 2008) (defining SAPCR as suit in which party requests appointment as managing conservator).

We conclude, therefore, that the July 2009 Ruling was not a final SAPCR order, the trial court's plenary power had not run, and the May 2010 Decree was the final judgment in this case.

### a) Res Judicata and Collateral Estoppel

Kent argues that the facts and claims raised by Lori's January 2010 Motion to Enforce were either actually litigated in the April 2009 trial and resolved by the July Ruling or could have been, and thus barred by either *res judicata*, see *Igal* v. *Brightstar Info. Tech. Grp.*, 250 S.W.3d 78, 86 (Tex. 2008), or collateral estoppels, see *Van Dyke* v. *Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). Both of these doctrines, however, require a final judgment. *See Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 595 (Tex. App.—Houston [14th Dist.] 2000, no pet.) Having determined that it was interlocutory, both the *res judicata* and the collateral estoppel arguments are inapplicable to the July Ruling. *See Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 437 n.21 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

We overrule Kent's *res judicata* and collateral estoppel arguments.

### b) Double Jeopardy

Kent further asserts that the contempt order contained in the May Decree is barred by double jeopardy. Although contempt of court proceedings may be criminal or civil, see *Ex parte Johns*, 807 S.W.2d 768, 770–71 (Tex. App.—Dallas

6

1991, orig. proceeding), *In re Johnson*, 150 S.W.3d 267, 271 (Tex. App.—Beaumont 2004, orig. proceeding), double jeopardy generally applies only to criminal contempt. TEX. CONST., art. I, §14; *see also Ex parte Hudson*, 917 S.W.2d 24, 26 (Tex. 1996); *Ex parte Jones*, 36 S.W.3d 139, 142 (Tex. App. – Houston [1st Dist.] 2000, pet. ref'd). The distinction between criminal and civil contempt derives from the nature and purpose of the penalty imposed. *See Ex parte Johns*, 807 S.W.2d at 770–71. As a means to persuade the contemnor to obey a previous court order, civil contempt is conditional, albeit coercive, in that it can impose a fine, confinement, or both, unless and until the contemnor performs the affirmative act required by the court's order. *See In re Johnson*, 150 S.W.3d at 271; *Ex parte Johns*, 807 S.W.3d at 770. A determinate sentence containing a "purge clause" can also be imposed by the court in a civil contempt order. *See In re Johnson*, 150 S.W.3d at 271; *Ex parte Johns*, 807 S.W.3d at 770. Double jeopardy principles, however, are inapposite to a civil contempt order assessing confinement conditioned on the contemnor obtaining his release by purging the contempt. *See Ex parte Hudson*, 917 S.W.2d at 26; *Ex parte Jones*, 36 S.W.3d at 142.

Here, the May 2010 Decree and contempt order recites that Kent's confinement (Fort Bend County jail) is suspended provided that he complies with certain requirements, including payment of all future child support when due, and

making arrangements to pay the arrearages. Such a coercive civil order is not subject to double jeopardy analysis. *See Ex parte Hudson*, 917 S.W.2d at 26; *Ex parte Jones*, 36 S.W.3d at 142; *see also Deltuva v. State*, No. 05-05-01325-CR, 2007 WL 1054134, at *6 (Tex. App.—Dallas, Apr. 10, 2007, no pet.) (concluding that portion of trial court's order finding defendant in contempt and ordering him confined until he paid child support arrearages was coercive civil contempt order and not subject to double jeopardy analysis).

We overrule Kent's third sub-issue to issue one.

### c) Charging Instrument

Kent contends that the trial court was barred from holding him in contempt because the motion to enforce did not meet the notice standards of a charging instrument and the court's order based upon that motion violated his right to due process. Specifically, Kent contends that Lori's January 2010 motion to enforce omitted the portion of the underlying order sought to be enforced, and failed to specify the dates of noncompliance, as required by Texas Family Code sections 157.002 (a) and (b). *See generally In re Smith*, 981 S.W.2d 909, 911 (Tex. App.— Houston [lst Dist.] 1998, no pet.). Because child support contempt proceedings are quasi-criminal in nature, Kent was entitled to procedural due process. *See id.* at 911; *Ex parte Conoly*, 732 S.W.2d 695, 698 (Tex. App.—Dallas 1987, orig. proceeding) (stating that purpose of enforcement order is to provide respondent

8

with proper notice of allegations of contempt for which he must prepare defense at hearing on contempt motion).

Lori's January 2010 motion, however, was not her only motion to enforce on file with the trial court at the time the final decree was issued in May 2010. She had filed a motion to enforce on December 17, 2007—which Kent does not challenge—that did meet the standards of a charging instrument. *See* TEX. FAM. CODE Ann.§ 157.002 (a), (b) (West 2008).

Lori's December 2007 motion alleged that Kent failed to pay $2,100/month in child support for September and October 2007, and that based upon Kent's repeated past violations, she believed that Kent would continue to disregard the court's order and asked that he "be held in contempt, jailed, and fined for each failure to comply with the Court's order from the date of this filing to the date of the hearing on this motion." *See* TEX. FAM. CODE ANN. § 157.002(e) (West 2008). According to her motion, Kent's next payment of $2,100 was due on December 20, 2007. Kent's own trial testimony concedes his failure to make the October, November, and December 2007 child support payments. In light of this December 2007 motion—which Kent does not challenge on appeal—we cannot say that Kent was without notice of the contempt allegations against him.

We overrule Kent's fourth sub-issue to issue one.

## 2) Unpaid Temporary Alimony and Spousal Maintenance

In his second and third issues, Kent argues that the trial court's award of $35,000 in unpaid temporary alimony and $54,000 in future spousal maintenance is without supporting evidence. Lori points out that the appellate record is incomplete because there are no transcripts of the evidentiary hearings prior to the April 7th trial date. Kent does not dispute that he did not request the court reporter to prepare transcripts of those prior hearings. Rather, citing to the docket sheets in the clerk's record, Kent argues that the evidentiary hearings to which Lori referred dealt with matters irrelevant to the spousal maintenance issues he is appealing.

The appellant bears the burden of bringing forward a sufficient record to show the trial court's error. *See Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.) A sufficient record, however, does not necessarily mean a complete record. Indeed, Texas Rule of Appellate Procedure 34.6(c) specifically allows an appellant to request a partial reporter's record. Such request must also include "a statement of the points or issues to be presented on appeal and [the appellant] will then be limited to those points or issues." TEX. R. APP. P. 34.6(c)(1). If only a partial reporter's record is requested, and the required list of points or issues are not included, we presume that the omitted portions of the reporter's record support the trial court's findings. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) ("An appellant must

either comply with [the predecessor to Rule 34.6] or file a complete statement of facts; otherwise, it will be presumed that the omitted portions are relevant to the disposition of the appeal."); *see also Long v. Long*, 144 S.W.3d 64, 69 (Tex. App.—El Paso 2004, no pet.) (applying presumption to family law case involving unrecorded in camera interviews with minors).

Kent here concedes that the appellate record is without transcripts of all of the evidentiary proceedings before the trial court. Nor does the record contain documentation of any attempt by Kent to comply with the provisions of rule 34.6 regarding a partial reporter's record. Accordingly, we must presume the missing portions of the reporter's record support the trial court's findings of fact, and we take those findings as true. *See Christiansen*, 782 S.W.2d at 843.

We overrule Kent's second and third issues.

## Conclusion

We affirm the judgment of the trial court.



Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

11