Opinion filed April 29,
2010

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00034-CV

                                                    __________

 

                                           IN
RE RAY B. SMITH



 

                           Original
Habeas Corpus and Mandamus Proceeding

 



 

                                                                  O
P I N I O N

            Relator,
Ray B. Smith, Ph.D., brings this original habeas corpus proceeding and,
alternatively, mandamus proceeding complaining of the trial court’s finding him
in contempt for violating a permanent injunction.  Because the trial court’s
final order and judgment of contempt lacks evidentiary support, we conditionally
grant mandamus relief.

Introduction

            In
2007, Dr. Smith published a book entitled Cranial Electrotherapy
Stimulation, Its First Fifty Years, Plus Three: A Monograph (the 2007 book). 
Cranial Electrotherapy Stimulation (CES) is used for treatment of anxiety,
depression, insomnia, and other conditions.  Dr. Smith’s 2007 book contained
his meta-analyses of studies that had been performed to determine the
effectiveness of CES in treating various conditions.  “Meta-analysis” is
defined as “a quantitative statistical analysis of several separate but similar
experiments or studies in order to test the pooled data for statistical
significance.” Merriam-Webster’s Collegiate
Dictionary 779 (11th ed. 2004).  Dr. Smith explained in his 2007 book
that “[m]eta-analysis is a way of combining the results of many separate
studies to see the effectiveness of a treatment.”

            Dr.
Smith is a former Director of Science at Electromedical Products International,
Inc. (EPII).  EPII researches, develops, and markets CES technology.  EPII
asserted that Dr. Smith’s publication of his 2007 book violated a permanent
injunction that it had obtained against Dr. Smith in 2003.  Therefore, EPII
filed a motion to enforce the permanent injunction and to hold Dr. Smith in contempt
for violating the permanent injunction.  Following a hearing on EPII’s motion, the
trial court found that Dr. Smith had violated the terms of the permanent
injunction and entered its final order and judgment of contempt against him.  In
this original proceeding, Dr. Smith challenges the trial court’s final order
and judgment of contempt.

The
2003 Suit and Judgment

            Dr. Smith
began his employment with EPII in 1998.  At that time, Dr. Smith and EPII entered
into a Non-Disclosure/Non-Circumvention Agreement.  The agreement contained a
“Restrictive Covenant” in which Dr. Smith agreed that, during or after the term
of his employment, he would not, among other things, “disclose, disseminate,
publish, or use . . . [EPII’s] Confidential Information, . . . except as may be
required in the proper discharge of [his] duties pursuant to [his] employment.”
 As defined in the agreement, the term “Confidential Information” included
information “disclosed to [Dr. Smith] or known by [Dr. Smith] as a consequence
of or through [his] employment by EPII which information is not generally known
in the industry in which EPII is or may become engaged.”  The agreement
provided that, upon the termination of Dr. Smith’s employment, (1) Dr. Smith would
return all confidential information and customer lists to EPII, (2) EPII would
be entitled to injunctive relief against Dr. Smith if he breached the
restrictive covenant, and (3) Dr. Smith would not enter into or engage in any
business in competition with EPII for a period of three years from the date of
his termination.

            Dr. Smith’s
employment duties included writing items for publication on behalf of EPII.  At
EPII’s request, Smith began writing a manuscript that was entitled Cranial
Electrotherapy Comes of Age.  Before the manuscript was completed, EPII
discovered facts leading it to conclude that Dr. Smith had breached the
Non-Disclosure/Non-Circumvention Agreement.  Therefore, EPII terminated Dr. Smith’s
employment.

            On February
7, 2003, EPII filed suit against Dr. Smith for breach of the agreement.  In its
petition, EPII requested the trial court to enjoin Dr. Smith from “disclosing,
publishing, and/or using [its] confidential information and trade secrets” and
from “competing with EPII or participating in business in a similar capacity to
EPII’s business for a period of three years from the date of the termination of
[Dr.] Smith’s employment.”

            Following
a bench trial, the trial court concluded that Dr. Smith had breached the
agreement.  On August 11, 2003, the trial court entered a judgment in EPII’s
favor.  In the judgment, the trial court found that, unless permanently
enjoined, “[Dr. Smith] intends to directly or indirectly participate in
business in a similar capacity to EPII’s business in violation of the
non-competition provisions of his Non-Disclosure/Non-Circumvention Agreement”
and “[Dr. Smith] intends to disclose, disseminate, publish, or use or
permit the use, of [EPII’s] business information in violation of the
Non-Disclosure/Non-Circumvention Agreement.”  Therefore, the trial court
granted injunctive relief in EPII’s favor and ordered the following:

            [T]hat
[Dr. Smith] . . . desist and refrain from directly or indirectly entering into
or engaging in any business in competition with [EPII] . . . through January
31, 2006.[1]

 

           . . . .

 

            . . . 
THAT [Dr. Smith] . . . desist and refrain from . . . disclosing, disseminating,
lecturing upon, publishing, using or permitting the disclosure, dissemination,
publishing or use of any and all information disclosed to [him] or known by
[him] as a consequence or through his employment by [EPII] which information is
not generally known in the industry in which [EPII] is engaged or may become
engaged. . . .[2]

 

           . . .  [T]hat
[Dr. Smith] . . . return any and all copies . . . of all unpublished
manuscripts, monologues, articles, books and studies, whether in draft or final
form, that were written on the subject of CES, TENS, and/or wound healing while
an employee of [EPII] or thereafter, including, but not limited to, all copies
of “Cranial Electrotherapy Comes of Age.”  The Court finds that all
manuscripts, monologues, articles, books and studies written by [Dr. Smith] on
the subject of CES, TENS and/or wound healing during or after his employment
with [EPII] are the property of [EPII] and [Dr. Smith] may not disclose,
disseminate, lecture upon, publish, use or permit the disclosure,
dissemination, publication or use of any of the materials listed above.

 

In addition to
granting injunctive relief, the trial court awarded attorney’s fees to EPII.  The
trial court entered findings of fact and conclusions of law in support of its
judgment.  In one finding of fact, the trial court stated that, under the
Non-Disclosure/Non-Circumvention Agreement, “in exchange for EPII providing
Smith with confidential business information, Smith agreed not to disclose such
confidential business information during or after his employment with EPII.”

            Dr. Smith
appealed the trial court’s 2003 judgment to this court.  In a single point of
error, Dr. Smith contended that the trial court lacked subject-matter
jurisdiction over EPII’s claims because the claims were copyright claims that
fell within the exclusive jurisdiction of the federal courts.  We disagreed
with Dr. Smith, and we affirmed the trial court’s judgment.  See Smith v.
Electromedical Prods. Int’l, Inc., No. 11-03-00386-CV, 2005 WL 1983550
(Tex. App.—Eastland Aug. 18, 2005, no pet.) (mem. op.).

The
Current Proceedings

            Following
Dr. Smith’s publication of his 2007 book, EPII filed its motion to enforce the
permanent injunction and for contempt.  In its motion, EPII alleged that Smith
had violated the permanent injunction (1) by publishing his 2007 book and (2)
by failing to return to EPII all copies of EPII’s 2003 unpublished manuscript, Cranial
Electrotherapy Comes of Age (the 2003 manuscript).  The trial court held an
evidentiary hearing on EPII’s motion.  Daniel Kirsch, Ph.D. (the chairman of
EPII) and Dr. Smith testified.  Following the hearing, the trial court entered
its final order and judgment of contempt.

            As
set forth above, the trial court included three areas of injunctive relief in
the 2003 permanent injunction.  First, the trial court enjoined Dr. Smith from
competing with EPII through January 31, 2006.  Second, the trial court enjoined
Dr. Smith from disclosing or using information he learned through his
employment with EPII that was “not generally known in the industry.”  Third,
the trial court required Dr. Smith to return all copies of the listed materials,
including the 2003 manuscript, and the trial court found that all such
materials were EPII’s property and prohibited Dr. Smith from disclosing or
using the materials.

            In
finding Dr. Smith in contempt, the trial court relied on the third area of
injunctive relief in the 2003 permanent injunction.  Specifically, the trial
court stated in the contempt order that the permanent injunction contained the
following provision:

      ORDERED, that
[Dr. Smith] be and hereby is commanded to return any and all copies, whether currently
held in paper or electronic or disk format, of all unpublished manuscripts,
monologues, articles, books, and studies, whether in draft or final form, that
were written on the subject of CES, TENS and/or wound healing while an employee
of [EPII] or thereafter, including, but not limited to, all copies of “Cranial
Electrotherapy Comes of Age.”  The Court finds that all manuscripts,
monologues, articles, books, and studies written by [Dr. Smith] on the subject
of CES, TENS and/or wound healing during or after his employment with [EPII]
are the property of [EPII] and [Dr. Smith] may not disclose, disseminate,
lecture upon, publish, use or permit the disclosure, dissemination, publication,
or use of any of the materials listed above.

 

The trial court
found that “Dr. Smith’s 2007 book entitled Cranial Electrotherapy
Stimulation, Its First Fifty Years, Plus Three: A Monograph (‘Smith’s 2007
Book’) is more than substantially the same as the contents of Plaintiff EPII’s
2003 Manuscript, which is EPII’s property.”  Based on this finding, the trial
court concluded that Dr. Smith had knowingly violated the permanent injunction
“(i) [by] materially using EPII’s 2003 Manuscript in the publication of Dr.
Smith’s 2007 Book, and (ii) by failing to return to EPII all copies and/or
notes of his work on EPII’s 2003 Manuscript.”  Therefore, the trial court
granted EPII’s motion to enforce the permanent injunction and for contempt.  The
trial court stated that “Defendant Dr. Smith is found in contempt of this
Court’s August 11, 2003 permanent injunction prohibiting his publication of the
information within EPII’s 2003 Manuscript, and further requiring his return to [EPII]
of all copies and drafts of EPII’s 2003 Manuscript.”

            Based
on its finding that Dr. Smith was in contempt, the trial court set forth the
following remedies in its final order and judgment of contempt:

      (1) Dr. Smith
is hereby found in contempt and ordered to be incarcerated in the Palo Pinto
county jail for 180 days.

 

     (2) Within 30
days of the signing of this Order, Dr. Smith, at his sole expense, shall recall
all copies of Dr. Smith’s 2007 Book that have been printed, sold, or otherwise
distributed, either directly by himself, or through any employer, and/or
through any third parties pursuant to his direction or control, expressly
including, but not limited to, amazon.com and barnesandnoble.com; and shall
thereafter produce all recovered books to Plaintiff’s counsel within 30 days of
Dr. Smith’s receipt.  Dr. Smith shall fully and concurrently reimburse all
purchasers and/or distributors of same, including purchase price, shipping
costs, and all other reasonable expenses. 

 

     (3) Within 30
days of the signing of this Order, Dr. Smith shall issue written instruction to
Fisher Wallace Laboratories, in a form to be approved by Plaintiff’s counsel,
directing Fisher Wallace Laboratories to remove Dr. Smith’s 2007 Book from
Fisher Wallace’s website, and to return to Dr. Smith all copies of Dr. Smith’s
2007 Book, which Dr. Smith shall forward to Plaintiff’s counsel within 30 days
of Dr. Smith’s receipt of same.

 

     (4) Within 30
days of the signing of this Order, Dr. Smith shall issue written apologies, in
forms acceptable to the Court, to both this Court, for violating the Court’s
lawful orders, and to Plaintiff, for Dr. Smith’s prohibited use of Plaintiff’s
proprietary information.

 

     (5) Within 30
days of the signing of this Order, Dr. Smith shall return, and seek any and all
non-parties to return, any and all manuscripts, monologues, articles, books and
studies that were written by Dr. Smith on the subject of CES, TENS, and/or
wound healing while an employee of Plaintiff, or based upon information
acquired during such employment, and/or his work with same, pursuant to this
Court’s Final Judgment, dated August 11, 2003.

 

     (6) Within 30
days of the signing of this Order, Dr. Smith shall provide an accounting of all
compensation and other consideration received by and/or promised to Dr. Smith
arising from the sale of his 2007 Book, and/or the writing of same as an
employee, agent, or contractor for himself or others.  Within 60 days of
delivery to Plaintiff of Dr. Smith’s accounting, Plaintiff may make application
to this Court for disgorgement and/or other relief regarding same.

                                                                  

The trial court suspended
Dr. Smith’s jail sentence specified in item 1, “contingent upon [Dr. Smith’s]
full and timely performance of the instruction items 2 through 6 above, failing
which he shall present himself to this Court for incarceration under item 1
above and coercive confinement thereafter until the contempt is purged.”[3]
 The trial court awarded EPII $52,000 for attorney’s fees plus conditional
attorney’s fees in the event of an appeal.

 

Jurisdiction
to Review the Trial Court’s Contempt Order

            A
court of appeals lacks jurisdiction to review a contempt order by direct
appeal.  Tex. Animal Health Comm’n v. Nunley, 647 S.W.2d 951, 952 (Tex.
1983); Tracy v. Tracy, 219 S.W.3d 527, 530 (Tex. App.—Dallas 2007, no
pet.).  Contempt orders that involve imprisonment may be reviewed via a
petition for writ of habeas corpus; contempt orders that do not involve
confinement may be reviewed via a petition for writ of mandamus.  In re Long,
984 S.W.2d 623, 625 (Tex. 1999); Tracy, 219 S.W.3d at 530; Adams v.
Bell, 94 S.W.3d 759, 762 (Tex. App.—Eastland 2002, no pet.).  In this case,
the trial court suspended its order of confinement.  Because Dr. Smith has not
been confined, his only possible relief is a writ of mandamus.  See In re
Long, 984 S.W.2d at 625; see also In re Zenergy, Inc., 968 S.W.2d 1,
12 (Tex. App.—Corpus Christi 1997, orig. proceeding) (A suspended contempt
order may be reviewed by habeas corpus “when and if [the trial court] enforces
the judgment.”).

Standard
of Review

            Mandamus
is an extraordinary remedy that is available to correct a clear abuse of
discretion or the violation of a duty imposed by law when there is no adequate
remedy by appeal.  Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992).  A trial court abuses its discretion by entering a contempt judgment
that is not supported by evidence, and such a judgment is void.  In re Long,
984 S.W.2d at 626-27 (The trial court abused its discretion in entering a contempt
order; the contempt order was void because there was no evidence of contempt.);
Deramus v. Thornton, 333 S.W.2d 824, 830 (Tex. 1960) (“A judgment of
contempt without support in the evidence is void, and the Court is without
jurisdiction to order punishment in the absence of some evidence of
contemptuous disobedience.”).

Issues
Presented

             Dr.
Smith presents four issues for review.  In his first issue, he asserts that the
trial court’s final order and judgment of contempt is void because it lacks evidentiary
support.  In his second issue, he asserts that the trial court abused its
discretion by expanding the scope of the injunctive relief awarded in the 2003
judgment so as to preclude his use of nonconfidential information.  In his
third issue, he contends that, if we conclude that the trial court’s
interpretation of the 2003 judgment was reasonable, the 2003 judgment is
ambiguous and susceptible to more than one interpretation.  In his fourth
issue, he contends that the trial court abused its discretion in ordering
remedies other than confinement or a fine.

The
Evidence

            EPII
introduced a copy of Dr. Smith’s 2007 book and a copy of its 2003 manuscript
into evidence.  Both works contain Dr. Smith’s meta-analyses of studies
performed to determine the effectiveness of CES in treating various conditions.
 In his 2007 book, Dr. Smith meta-analyzed many of the CES studies that he
meta-analyzed in EPII’s 2003 manuscript.

            Dr.
Smith’s 2007 book contains meta-analyses summarizing CES studies of the
following syndromes: (1) insomnia; (2) depression; (3) anxiety; (4) cognitive
dysfunction; and (5) drug abstinence.  Dr. Smith meta-analyzed a total of fifty-seven
CES studies in his 2007 book.  Many of the fifty-seven studies fell into more
than one of the five areas listed above.  For example, Dr. Smith analyzed
one study as being a sleep study, a depression study, and an anxiety study.

            Dr.
Smith’s 2007 book contains tables identifying the CES studies that he
meta-analyzed in each of the above areas.  The tables show, among other things,
the study design for each study (double blind, single blind, crossover, or open
clinical) and the number of subjects involved in each study.  The tables also reference
each study by number so that the authors of the various studies may be
identified from a reference list in the book.  The tables also show that Dr.
Smith meta-analyzed the following CES studies: (1) 18 sleep studies involving
648 patients that had been completed over the past 43 years; (2) 18 depression
studies involving 853 patients that had been completed over the past 36 years;
(3) 38 anxiety studies involving 1,495 patients that had been completed over
the past 36 years; (4) 13 cognitive function studies involving 648 patients
that had been completed over the past 31 years; and (5) 15 drug abstinence
syndrome studies involving 535 patients.[4] 
Based on his five meta-analyses, Dr. Smith concluded (1) that the overall effectiveness
of CES for treating sleep disorder conditions was 62% improvement; (2) that
the overall effectiveness of CES for treating depression was 47% improvement;
(3) that the overall effectiveness of CES for treating anxiety was 58%
improvement; (4) that the overall effectiveness of CES for treating cognitive
dysfunction was 44% improvement; and (5) that the overall effectiveness of CES
for treating drug abstinence syndrome was 60% improvement.

            EPII’s
2003 manuscript contains meta-analyses by Dr. Smith of anxiety studies,
depression studies, addiction studies, sleep studies, and cognitive function
studies.  EPII’s manuscript also includes tables identifying the studies that Dr.
Smith meta-analyzed.  The tables show, among other things, the authors of the
studies and the number of patients treated in the studies.  In the tables, the
studies that Dr. Smith meta-analyzed are listed by author.  In contrast, in the
tables in Dr. Smith’s 2007 book, the studies are grouped by study design:
“Double Blind,” “Single Blind,” “Crossover,” or “Open Clinical.”

            Dr.
Kirsch testified that meta-analysis is a mathematical means of combining a
number of studies to basically reaffirm the results.  He said that Dr. Smith drafted EPII’s 2003 manuscript. Dr. Kirsch also said that he had compared EPII’s
2003 manuscript with Dr. Smith’s 2007 book. He said that EPII’s 2003 manuscript
and Dr. Smith’s 2007 book contain meta-analyses of the same CES data and that
the meta-analyses in the two works are “virtually the same.”  He also said that
the charts (tables) in the two works are “virtually identical.”  Dr. Kirsch
testified that some studies that are included in EPII’s 2003 manuscript are omitted
from Dr. Smith’s 2007 book.  Dr. Kirsch also testified that, to his knowledge,
Dr. Smith had not returned any copies of the 2003 manuscript.  During
cross-examination, Dr. Kirsch acknowledged that there are differences in Dr.
Smith’s 2007 book and EPII’s 2003 manuscript.

        Dr.
Smith’s counsel asked Dr. Kirsch a number of questions about whether EPII
contended that Dr. Smith had published EPII’s confidential or proprietary
information in his 2007 book.   EPII’s attorney stated that “[w]e’re not
alleging that anything that has been published is confidential; and if that’s what
-- if that’s the gist of what we’re getting at, we’ll concede that.”

            Dr.
Smith testified that he did not have any copies of EPII’s 2003 manuscript.  Dr.
Smith testified that most of the CES studies that are included in the 2003
manuscript are also included in his 2007 book.  However, he said that the meta-analyses
in the 2003 manuscript are not similar to the meta-analyses in his 2007 book.  Dr.
Smith testified that he completely redid the meta-analyses for the 2007 book.  He
said that he had not seen the 2003 manuscript in the past five years.  The
following exchange then took place:

[EPII’S
COUNSEL]: You had the -- just so happened to use the identical 109 studies in
2007 as the same 109 studies that you used in 2003.  You just came upon those
studies, right?

 

[DR.
SMITH]: No.

 

            In
meta-analysis, you go through all the studies that are published and you take
out the ones that can be meta-analyzed and you get as many of those you can
find and you meta-analyze those.  And I did that in the 2003 manuscript.  I did
it again for my book.

 

[EPII’S
COUNSEL]: So is it your testimony that the 2007 book is a complete do-over? You
had nothing at all about the 2003 manuscript.  You didn’t rely upon it.  You
didn’t copy it. You didn’t even have it.  You didn’t have any analysis or any access
to it all and you just -- 

 

[DR.
SMITH]: That’s correct.  That is correct.

 

[EPII’S
COUNSEL]:  -- for the purposes of drafting your 2007 book?

 

[DR.
SMITH]: That’s correct.

 

            Dr.
Smith testified that he learned how to perform meta-analysis in 1964 as part of
his Ph.D. program.  He said that he started studying CES in 1972.  He testified
that, in 1985, he performed a meta-analysis of forty-four CES studies in
connection with writing a chapter in the book, Neural Stimulation.  He
also testified that, before working for EPII, he meta-analyzed fifty-two of the
fifty-seven CES studies in his 2007 book.  He said that the other five studies
in his book were published while he was employed with EPII.  Dr. Smith also
said that all of the studies contained in the 2007 book were available to the
public.

           Dr.
Smith testified that, with respect to his 2007 book, he did separate
meta-analyses on the double-blind studies, the single-blind studies, and the
open clinical studies.  He testified that, in his 2007 book, he wrote about a
new and previously unpublished theory as to why CES works. Dr. Smith believed
that about 400 copies of his 2007 book had been sold.

Dr.
Smith’s Challenges to Trial Court’s Contempt Findings

            In
his first issue, Dr. Smith argues that no evidence supports the trial court’s
conclusion that he violated the 2003 permanent injunction.  The trial court
found that the contents of the 2007 book and the contents of the 2003
manuscript are “more than substantially the same.”  Dr. Smith asserts
that, based on this finding, the trial court impermissibly presumed, without
evidentiary support, that he used the 2003 manuscript when writing his 2007
book and that he failed to return to EPII all copies of the 2003 manuscript. 
Dr. Smith asserts that the trial court’s final judgment and order of contempt
is void because it lacks evidentiary support.

            In
arguing that the evidence supports the trial court’s final order and judgment
of contempt, EPII asserts that “[Dr.] Smith’s 2007 Book is nearly identical to
EPII’s 2003 Manuscript.”  A side-by-side comparison of Dr. Smith’s 2007 book with
EPII’s 2003 manuscript shows that, while the works contain similarities, they
are different in many respects.  Some of the similarities are (1) that Dr.
Smith’s 2007 book and EPII’s 2003 manuscript both contain meta-analyses of CES
studies, (2) that the 2007 book includes most of the CES studies that are
included in EPII’s 2003 manuscript, and (3) that, based on his meta-analyses, Dr.
Smith reached similar conclusions as to the effectiveness of CES treatment in
the 2007 book and the 2003 manuscript.  However, viewing all the evidence in
the record, the similarities in the works do not support the conclusion that
Dr. Smith used EPII’s 2003 manuscript in publishing his 2007 book.     

            Dr.
Smith testified that he did not have a copy of EPII’s 2003 manuscript when
writing his 2007 book.  He testified that he performed new meta-analyses for
his 2007 book.  Dr. Smith explained the process for performing meta-analysis. 
He said that all published studies are examined for the purpose of identifying which
of the studies contain sufficient data for meta-analysis.  Once those studies
are identified, they are meta-analyzed.  Dr. Smith said that he followed this
process in EPII’s 2003 manuscript and that he “did it again” for his 2007 book.
 The studies that contained sufficient data for meta-analysis in 2003 would still
have been available in 2007.  Therefore, one would expect the studies that are included
in EPII’s 2003 manuscript to also be included in Dr. Smith’s 2007 book.      

            EPII
did not present evidence that Dr. Smith published any information in his 2007
book that necessarily came from his use of its 2003 manuscript.  The evidence
showed that the CES studies contained in the 2007 book were not confidential
information belonging to EPII.  Instead, the studies were public information,
and they were readily available from sources other than EPII’s 2003 manuscript. 
The evidence showed that Dr. Smith had knowledge of available CES studies.  Dr.
Smith testified that, before his employment with EPII, he meta-analyzed fifty-two
of the fifty-seven studies that are included in his 2007 book.  The fact that
Dr. Smith’s 2007 book includes most of the CES studies that are included in EPII’s
2003 manuscript is no evidence that Dr. Smith used EPII’s 2003 manuscript when
writing his 2007 book.

            Dr.
Kirsch testified that meta-analysis is a mathematical means of combining a
number of studies to basically reaffirm the results.  Because Dr. Smith’s 2007
book includes most of the studies that are included in the 2003 manuscript, one
would expect the results of his meta-analyses to be similar, if not the same,
in both works.  Thus, the fact that Dr. Smith’s meta-analyses yielded similar
conclusions in the 2007 book and the 2003 manuscript is no evidence that he
used the 2003 manuscript in writing his 2007 book.  

            There
is no evidence that Dr. Smith used EPII’s 2003 manuscript in publishing his
2007 book or that he failed to return to EPII all copies of the 2003
manuscript.  Therefore, no evidence supports the trial court’s conclusions that
Dr. Smith knowingly violated the 2003 permanent injunction “(i) [by] materially
using EPII’s 2003 Manuscript in the publication of Dr. Smith’s 2007 Book, and (ii)
by failing to return to EPII all copies and/or notes of his work on EPII’s 2003
Manuscript.”  Dr. Smith’s first issue is sustained.

            In
his second issue, Dr. Smith asserts that, in its final order and judgment of
contempt, the trial court improperly expanded the scope of the permanent injunction
in the 2003 judgment so as to preclude his use of nonconfidential information. 
The trial court made a distinction between “information” and “materials” in the
2003 judgment.  In one injunctive provision, the trial court prohibited Dr.
Smith from publishing or using information learned by him through his
employment with EPII that was “not generally known in the industry.”  Under the
terms of this provision, EPII’s confidential information was protected from disclosure. 
On the other hand, Dr. Smith was free to publish or use information that
was generally known in the industry.  In another injunctive provision, the trial
court prohibited Dr. Smith from publishing or using certain materials,
including EPII’s 2003 manuscript, which the trial court found belonged to EPII. 
In its final order and judgment of contempt, the trial court interpreted this “materials”
provision to prohibit Dr. Smith not only from publishing or using the materials
but also from publishing or using the information contained in the materials.  Thus,
the trial court found Dr. Smith “in contempt of this Court’s August 11, 2003
permanent injunction prohibiting his publication of the information within
EPII’s 2003 Manuscript.”

            EPII
does not contend that Dr. Smith published any of its confidential information
in his 2007 book.  However, as the trial court concluded, EPII argues that the
injunctive provision prohibiting Dr. Smith from publishing or using “materials”
precludes his publication or use of information within those materials, whether
or not the information is confidential.  EPII states that the permanent
injunction “clearly prohibited [Dr.] Smith’s publication or use of the information
within EPII’s 2003 Manuscript.”

            We
disagree with EPII’s argument for a number of reasons.  First, EPII did not
seek to protect nonconfidential information in the 2003 suit.  Such a request
would have been improper because an injunction that grants protection to
information that is not confidential or proprietary is impermissibly overbroad. 
Sw. Research Inst. v. Keraplast Techs., Ltd., 103 S.W.3d 478, 482 (Tex.
App.—San Antonio 2003, no pet.).  Second, we look to the clear language in the
2003 judgment.  The trial court stated that “[Dr. Smith] may not . . . publish
[or] use . . . any of the materials listed above.”  The trial court did not
state that Dr. Smith could not publish or use information that was in those
materials.  Third, EPII’s argument ignores the distinction between
“information” and “materials” in the 2003 judgment.  If the “materials”
provision is interpreted to include a prohibition against publishing or using nonconfidential
information, it conflicts with the “information” provision in the judgment,
which allows Dr. Smith to publish or use information that is generally known in
the industry.  Fourth, EPII’s interpretation of the “materials” provision is
unreasonable because it results in the protection of nonconfidential
information and, therefore, makes the provision impermissibly overbroad.  Id.

            The
trial court’s 2003 judgment is unambiguous.  One reasonable interpretation of
the judgment exists.  The judgment prohibited Dr. Smith from publishing or
using information learned through his employment with EPII that was not
generally known in the industry.  The judgment also prohibited Dr. Smith from
publishing or using certain materials, including EPII’s 2003 manuscript. 
However, the judgment did not prohibit him from publishing or using the
information contained in those materials, as long as that information was
generally known in the industry.  There was no evidence that Dr. Smith
published any of EPII’s confidential information in his 2007 book.  Therefore,
the trial court improperly concluded that Dr. Smith violated the 2003 judgment by
“his publication of the information within EPII’s 2003 Manuscript.”  Dr. Smith’s
second issue is sustained.

            The
trial court abused its discretion in finding Dr. Smith in contempt of the 2003
judgment.  Therefore, Dr. Smith is entitled to mandamus relief.  Based on our
rulings on Dr. Smith’s first two issues, we need not address his third and
fourth issues.

            We
conditionally grant Dr. Smith’s petition for writ of mandamus.  The trial court
is directed to vacate its October 16, 2009 “Final Order and Judgment of
Contempt.”  With respect to the relief granted in this opinion, the writ of
mandamus will issue only if the trial court fails to act by May 19, 2010.

                                                                                                                                                                

April 29, 2010                                                                         TERRY
McCALL

Panel consists of:  Wright, C.J.,                                              JUSTICE

McCall, J., and Strange, J.









     [1]The trial court stated:

                For purposes of this order “business in
competition with [EPII]” shall include, but not be limited to, the research,
development, inventing, manufacturing, constructing, promoting, accounting,
merchandising, advertising, selling, leasing, contracting and general business
techniques as they relate to Cranial Electrotherapy Stimulation (“CES”)
devices, Transcutaneous Electrical Nerve Stimulation (“TENS”) devices, wound
healing devices, and the research, data recovery, analysis, drafting and
publication of written materials related to CES, TENS and wound healing.

 





     [2]The trial court stated that “information” included, but
was not limited to:

[I]nformation relating to research, development,
programming, techniques of application, inventions, manufacturing, operations,
construction, promotion, purchasing, accounting, marketing, merchandising,
advertising, selling, renting, leasing, negotiating, contracting, recording;
information identifying or tending to identify any or all of [EPII’s]
customers, clients, employees or insured of customers; recordings, scripts,
concepts, ideas, advertising, promotional material, copy, logos, techniques,
methods, plans, whether or not copyrightable or patentable; discoveries,
concepts, ideas, processes, methods, formulas, designs, techniques and
improvements thereof.

 





     [3]In the contempt order, the trial court punishes Dr.
Smith for past violations – as found by the trial court – of the provision in
the 2003 injunction prohibiting Dr. Smith from using or publishing EPII’s
materials.  Therefore, the trial court’s contempt order, at least in part, is
in the nature of a criminal contempt order.  Ex parte Jones, 36 S.W.3d
139, 142 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d); Ex parte Busby,
921 S.W.2d 389, 391 (Tex. App.—Austin 1996, pet. ref’d).  However, the issue of
whether the trial court’s order is a criminal contempt order, a civil contempt
order, or a hybrid contempt order has no bearing on the outcome of this
original proceeding.





     [4]The table entitled “Studies of the Drug Abstinence
Syndrome with CES” does not indicate the time period during which the studies
were completed.  However, the reference numbers in the table indicate that the
earliest study was published in 1967.